ECTORE REALTY Co., INC., Respondent, *v.* MANUFACTURERS TRUST COMPANY, Appellant.

First Department, March 12, 1937.

*Nathan Waxman* of counsel [*Newman & Bisco*, attorneys], for the appellant.

*Charles S. Rosenschein*, for the respondent.

COHN, J. This court upon a previous appeal reversed an order which denied defendant's motion to dismiss the original complaint and in granting the motion held that the cause of action set forth, whether for breach of contract to loan $25,000 on a bond and mortgage covering plaintiff's property, or for the conversion of the money so borrowed, was barred by the six-year Statute of Limitations. Leave to serve an amended complaint was granted as plaintiff had incorporated in its complaint some allegations appropriate to a fraud action. (*Ectore Realty Co., Inc.*, v. *Manufacturers Trust Co.*, 245 App. Div. 600.)

Defendant contends that the cause of action for alleged fraud stated in the amended complaint served pursuant to such permission did not accrue within the time limited by law for the commencement of such an action, while plaintiff asserts that the action which was commenced on May 2, 1934, was timely brought as the fraud and deceit alleged therein was not discovered by it until June, 1928, less than six years before the commencement of this action.

By statute, plaintiff's cause of action for fraud is not deemed to have accrued until *the discovery* by plaintiff of the facts constituting the fraud. (Civ. Prac. Act, § 48, subd. 5.) The issue to be decided here is whether defendant, upon the allegations of the amended complaint and upon facts set forth in its affidavit which are unchallenged, has conclusively established that the Statute of Limitations has run since the time when plaintiff knew or should have known the facts constituting the alleged fraud of defendant.

The facts as set forth in the amended complaint, by which plaintiff is of course bound, are as follows:

Commonwealth Bank, hereinafter referred to as Commonwealth, merged with defendant on July 29, 1927, and the latter thereupon assumed all its liabilities.

On May 26, 1926, plaintiff, a depositor of Commonwealth, applied for a loan of $25,000 upon its bond secured by a mortgage upon its property, to be repaid on June 24, 1927. Commonwealth thereupon contrived a fraudulent scheme to acquire without consideration this bond and mortgage as part of its " ostensible

assets " and agreed to make the loan upon delivery of the instruments; it also agreed to subordinate the mortgage to a second mortgage, then a lien on the premises, and also to a certain building loan agreement of a credit corporation, and consented not to record the mortgage until the money was advanced and the subordination effected, but Commonwealth had the intention of not keeping its agreement.

Relying upon the promises of Commonwealth, plaintiff on June 24, 1926, delivered its bond and mortgage in the sum of $25,000, but Commonwealth failed to lend plaintiff the money as agreed, and refused to cancel or return the bond and mortgage, although requested to do so. On June 30, 1926, without the consent of plaintiff, and without effecting the subordination to the second mortgage or to the building loan agreement, it recorded the mortgage and it falsely informed plaintiff that the proceeds were being applied by the bank to the payment of a pretended indebtedness owing to the bank by Vestal Products Co., Inc. (hereinafter called Vestal), a corporation independent of plaintiff but owned and controlled by the same stockholders, officers and directors as plaintiff; that thereafter and before the merger of Commonwealth and defendant, Commonwealth wrongfully seized and retained the books and records of Vestal and of plaintiff and it was not until June, 1928, that plaintiff was in a position to discover the true state of facts with regard to the pretended indebtedness of Vestal.

Unable to obtain from any other source the $25,000 agreed to be advanced by Commonwealth, plaintiff suffered damages in the sum of $150,000, as follows: (1) It was required to pay large bonuses to contractors and materialmen who were constructing a building on plaintiff's premises covered by the mortgage; (2) it was compelled to pay large sums to regain title to its premises sold in foreclosure, as the holder of the first mortgage on plaintiff's property had foreclosed because of plaintiff's inability to raise the funds necessary to discharge that mortgage; (3) it lost the use and value of the services of an architect in connection with the construction of the building; (4) it suffered a loss of profits which would have accrued to it from the sale of the premises; (5) the credit corporation, which was loaning money to the plaintiff under the building loan agreement, because of the bank's failure to subordinate its mortgage as agreed, refused to make further advances and secured a judgment against plaintiff in the sum of $23,000 for those theretofore made.

From the affidavit in support of the motion, it appears that the foreclosure deed of plaintiff's property was recorded in the register's office on February 9, 1927, and that the credit corporation's judgment against the plaintiff was entered in New York county on July 22, 1927.

In its answering affidavit, by its president, plaintiff states that it did not obtain information concerning "the fraud which had been perpetrated by the Commonwealth Bank" until June, 1928; that the disclosure came by a person formerly employed by Vestal and Commonwealth who has since died; that it thus discovered for the first time that Commonwealth had not applied any of the avails of the mortgage in discharge of any indebtedness of Vestal, and that it then discovered for the first time that the books of Vestal and plaintiff, which had been seized, had in fact been taken by Commonwealth.

We are of the opinion that upon the allegations of the amended complaint and the facts disclosed in defendant's affidavit, plaintiff had sufficient information to apprise it of the basic facts of the alleged scheme to defraud long prior to June, 1928, for the following reasons: (1) As early as June 24, 1926, plaintiff had delivered to Commonwealth its bond and mortgage, yet Commonwealth did not then or at any later time pay the $25,000 which it had agreed to advance; (2) although the bank had stipulated not to record the mortgage until it paid the $25,000 it violated its agreement by doing so on June 30, 1926; (3) before recording the mortgage the bank failed and refused to subordinate it to the second mortgage and to the building loan agreement as it had promised to do; (4) it thereafter refused to cancel or return the bond and mortgage although requested to do so, and Commonwealth falsely represented that after the mortgage had been recorded the avails thereof were applied to the debt of another corporation — the representation, if true, constituting a plain conversion of plaintiff's property; (5) without any apparent reason therefor Commonwealth *before July 29, 1927*, seized all the books and records of plaintiff and those of Vestal and thereafter denied plaintiff access to these books or records. Concededly, all damages which plaintiff claims it suffered as a result of the alleged fraud were sustained prior to July 29, 1927, which was the date of the merger between Commonwealth and defendant. Plaintiff had lost its property by foreclosure sale of the first mortgage, had paid materialmen increased sums, had lost its sale of the premises on its property and the credit corporation had obtained a judgment against it on the building loan agreement. In the face of all these facts, which gave ample evidence of fraud, what other information did plaintiff require to satisfy itself that Commonwealth was engaged in a scheme to mulct plaintiff out of its bond and mortgage or out of the sum of $25,000 which it had agreed to advance?

The right to sue accrued when "he [plaintiff] knew or should have known of the fraud." (*Dumbadze* v. *Lignante*, 244 N. Y. 1,

9.) Under settled principles of law, when facts are known from which the inference of fraud flows, there is a discovery of the facts constituting the fraud within the terms of the statute. From the time of such discovery, the statute begins to run. (*Sielcken-Schwarz* v. *American Factors, Ltd.*, 265 N. Y. 239; *Higgins* v. *Crouse*, 147 id. 411, 415; *Piper* v. *Hoard*, 107 id. 67, 70; *Kellogg* v. *Kellogg*, 169 App. Div. 395; affd., 224 N. Y. 597.) In the case of *Sielcken-Schwarz* v. *American Factors, Ltd.* (*supra*), our highest court, speaking through Judge LEHMAN (at p. 245) said: " A new cause of action for fraud does not accrue each time a plaintiff discovers new elements of fraud in a transaction or new evidence to prove such fraud. Where there is knowledge of facts sufficient ' to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises ' and may thus start the running of the statute. (*Higgins* v. *Crouse*, 147 N. Y. 411, 416; *Klotz* v. *Angle*, 220 N. Y. 347; *Taft* v. *Wright*, 47 How. Pr. 1; affd., 59 N. Y. 656.) The plaintiff and her mother, it is clear, knew prior to 1924 the basic facts upon which the claim of a conspiracy to defraud was based. Failure to discover all the details did not prevent the statute from running."

Upon the allegations of the amended complaint and in view of the undisputed statements contained in the affidavit in support of the motion, we are of the opinion that prior to July 29, 1927, and more than six years before the commencement of this action, plaintiff had at hand sufficient facts to discover the alleged fraud.

The order should be reversed, with twenty dollars costs and disbursements, and the motion in so far as it seeks dismissal on the ground that the cause of action is barred by the Statute of Limitations should be granted.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted.