[No. 28055.   *En Banc.*   October 30, 1940.]

R. E. DAVISON, *Respondent*, v. J. J. HEWITT *et al., Defendants*, HILDA V. HEWITT, *Appellant*.[1]

[1]Reported in 106 P. (2d) 733.

132

*Henderson, Carnahan & Thompson,* for appellant.
*Williamson, Freeman & Broenkow,* for respondent.

MILLARD, J.—On or about August 28, 1930, R. E. Davison, J. J. Hewitt, and Henry Hewitt incurred an indebtedness to the National Bank of Tacoma on their joint and several promissory note in the amount of five thousand dollars. This note was renewed at the bank every ninety days. At these times, Davison desired to pay his one-third of the note, but J. J. Hewitt and Henry Hewitt were not financially able to pay their proportion of the indebtedness; however, the two Hewitts paid their share of the interest on the note up to 1934. On insistence of the bank, Davison was required to personally pay the indebtedness of five thousand dollars to the bank September 23, 1932. Prior to May 10, 1932, and subsequent to that date, but prior to October 16, 1933,—on which dates the shares of stock in controversy were transferred to Henry Hewitt's wife—Henry Hewitt informed Davison that he could not pay his one-third of the indebtedness. Davison secured a judgment against Henry Hewitt

individually and against the marital community of Henry Hewitt and Hilda V. Hewitt, November 28, 1934, for one-third of the indebtedness which the bank required Davison to pay. At the time of the commencement of that action, Davison caused a writ of garnishment to be issued directing the Hewitt Land Company to answer as to any indebtedness owing by it to J. J. Hewitt and to Henry Hewitt. The writ did not require the garnishee to answer as to the wife of either of the marital communities. On October 16, 1934, counsel for Davison caused dismissal of the garnishment proceedings because of information to the effect that the shares of stock of the defendants in the company to which the writ of garnishment was issued were already pledged to secure payment of indebtedness of the defendants amounting to thousands of dollars.

Henry Hewitt (who had inherited the property in 1918 from his father) owned, as his separate property, one hundred shares of the capital stock of Hewitt Land Company. The entire capital of the company was represented by five hundred shares of stock. This corporation had assets of timber lands, stocks, and bonds, which, at the close of the year of 1932, had a book value of approximately three million dollars.

May 10, 1932, Henry Hewitt, without consideration, transferred to his wife, Hilda V. Hewitt, five shares of his stock in the Hewitt Land Company. October 16, 1933, he transferred to her, without consideration, ten shares of his stock in the land company. At the time of the transfer to his wife of the five shares of stock, Henry Hewitt was indebted to the National Bank of Tacoma in the amount of more than one hundred thousand dollars. On or about October 16, 1933, Henry Hewitt owed the bank about four thousand dollars less. As of December 31, 1933, Henry Hewitt's indebtedness to the bank had increased to one hundred

and twenty-four thousand dollars. A statement of the assets and liabilities of Henry Hewitt disclosed that his indebtedness in the year 1933 decreased ten thousand dollars—his total indebtedness was in excess of two hundred and thirty thousand dollars as of December 31, 1933—and his assets decreased ninety thousand dollars from December 31, 1932, to December 31, 1933. When Henry Hewitt transferred the ten shares of stock to his wife October 16, 1933, all of the shares of stock Hewitt then owned in the land company were pledged to the bank; in fact, the shares of stock transferred to Mrs. Hewitt were the only shares which were not pledged.

From the time of the transfers to the date of the hearing in 1940, the shares of stock given by Henry Hewitt to his wife as gifts stood in the name of Hilda V. Hewitt on the books of the corporation.

In December, 1939, Davison caused another writ of garnishment to be served upon the Hewitt Land Company requiring it to answer as to indebtedness owing by it to Henry Hewitt individually and the marital communities of Henry Hewitt and wife and J. J. Hewitt and wife, and further to answer what shares of the capital stock of the corporation the named defendants owned in the land company. The garnishee defendant answered that fifteen shares of stock were recorded on the books of the company in the name of Hilda V. Hewitt, which shares of stock the garnishee defendant "has been informed and believes are the separate property of the said Hilda V. Hewitt." Davison controverted this answer on January 6, 1940, and obtained an order restraining Hilda V. Hewitt and the Hewitt Land Company from disposing of the fifteen shares of stock until determination of the question whether, as alleged by Davison, the transfer of the

stock by Henry Hewitt to his wife was made in fraud of Davison as a creditor of Henry Hewitt.

Supplemental proceedings were instituted against Henry and Hilda V. Hewitt, and both proceedings were heard as one cause. The trial court was of the view that the burden imposed upon the husband and wife to show that the transfers were made in good faith had not been sustained; that the claim was not barred by the three-year statute of limitations, as the transfers were not discovered until December 27, 1939, from which date the statute would commence to run; and that a sale of a sufficient amount of the fifteen shares of the stock in the land company issued to Hilda V. Hewitt should be sold to satisfy the judgment of R. E. Davison. From the order entered in harmony with the foregoing, Hilda V. Hewitt appealed.

█ Under our community property law (Rem. Rev. Stat., § 6890 *et seq.*), the husband or wife may give or convey his or her separate property to the other spouse, provided he or she is free from debts and liabilities or, at the time of the making of the gift or conveyance, has ample means readily and conveniently accessible to his or her creditors and to the ordinary process used in the collection of debts. Of course, if the gift is valid when made, it is valid as to subsequent creditors. It should be borne in mind, however, that, in every case where any question arises as to the good faith of any transaction between husband and wife, the burden of proof shall be upon the party (appellant in the case at bar) asserting the good faith. Rem. Rev. Stat., § 5828 [P. C. § 1421].

Irrespective of the motive actuating the transfers by the husband of his separate property to his wife, it is clear that, at the time the transfers were made to appellant, her husband was insolvent; hence, the act of transferring the property is conclusive evidence of

fraud, and the intent is presumed from the act. The burden of proof was not met by appellant.

Counsel for appellant contend that the action is barred by the three-year statute of limitations. Counsel argue that, November 28, 1934, when respondent secured a judgment against the' marital community of Henry Hewitt and wife, there was available to respondent the same proceeding as he conducted in December, 1939, and January, 1940; and that, as respondent, who was affected by claimed fraudulent transactions, could with ordinary care and attention have seasonably detected the alleged fraud, he seasonably had actual knowledge of it.

Our statute (Rem. Rev. Stat., § 159 [P. C. § 8166], subd. 4) provides that the cause of action is deemed to have accrued when the fraud is discovered; and that, within three years thereafter, the action must be instituted or it is barred. *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561, upon which appellant relies, is to the effect that it will be presumed that, if the party affected by any fraudulent transaction might, with ordinary care and attention, have seasonably detected the fraud, he seasonably had actual knowledge of the fraud; that

"A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clue to the fact, which, if followed up diligently would lead to a discovery, is in law equivalent to discovery,—equivalent to knowledge."

In the application in 1939 for an order restraining appellant and the garnishee defendant from disposing of the shares of stock in controversy, respondent alleged that he did not know, until December 27, 1939, that the shares had been transferred to appellant. Appellant answered, pleading the statute of limitations in bar of the action, that, at the time of the is-

suance of the writ of garnishment in 1934, the shares "stood upon the books of Hewitt Land Company in the name of defendant Hilda V. Hewitt and had so stood on the records" of that company in the name of appellant ever since May 10, 1932, and October 16, 1933 (when the shares were transferred), and that any investigation made by respondent would have disclosed such fact. Respondent, in reply, alleged, in excuse of his failure to earlier discover the transfer, that, at the time of the service of the writ of garnishment in 1934, garnishee defendant's attorney informed respondent's counsel that none of the defendants owned any stock in the Land Company, on which information respondent relied and dismissed the garnishment proceedings in 1934; that respondent did not learn that the stock had been transferred until after answer to the writ of garnishment filed in December 1939.

Mere suspicion of wrong is not discovery of the fraud, nor is it a clue which respondent should have followed. Respondent may have been too trusting, but there is no showing of a lack of diligence on his part in detecting the fraud. The discovery contemplated by the statute (Rem. Rev. Stat., § 159, subd. 4) is of evidential facts leading to a belief in the fraud and by which the existence of the fraud may be established. There was not, until 1939, a discovery of such facts as would, on reasonably diligent investigation, have led to knowledge of the fraudulent transfer; hence, there was not, until 1939, discovery of the fraud.

A sufficient answer to the objection of appellant that, in the supplemental proceedings, there could be no trial of title to the shares of stock is Rem. Rev. Stat., § 615 [P. C. § 7929] reading as follows:

"Any person may be made a party to a supplemental proceeding by service of a like order in like manner as that required to be served upon the judgment

debtor, and upon proof by affidavit or otherwise, to the satisfaction of the judge, that execution has been issued and return made thereon wholly or partially unsatisfied, and also that any person or corporation has personal property of the judgment debtor of the value of twenty-five dollars or over, or is indebted to him in said amount, or is holding the title to real estate for the judgment debtor, or has knowledge concerning the property interests of the judgment debtor, the judge may make an order requiring such person or corporation, or an officer thereof, to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same."

Appellant was a party to the action at the time it was instituted and summons was served upon her in 1934. In the affidavit for supplemental proceedings and the order to appear, she was impleaded. See, also, *State ex rel. Gough v. Superior Court,* 137 Wash. 552, 243 Pac. 11.

The judgment is affirmed. The remittitur will go down immediately upon filing of this opinion.

ALL CONCUR.