HOFF RESEARCH & DEVELOPMENT LABORATORIES, INC., Plaintiff-Appellant,

v.

PHILIPPINE NATIONAL BANK and Philippine National Bank, New York Agency, Defendants-Appellees.

No. 743, Docket 34587.

United States Court of Appeals, Second Circuit.

Argued April 30, 1970.

Decided June 4, 1970.

Arnold Davis, New York City, for plaintiff-appellant.

Matthew E. McCarthy, New York City, for defendants-appellees.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

In 1961 the Clep Cement Corp., of Manila, Philippines, hired appellant, Hoff Research & Development Laboratories, Inc., an Ohio corporation, as a contractor for the construction of a cement plant in the Philippines. Hoff Research undertook to arrange the purchase of machinery and equipment in the United States and to supervise construction of the plant. Clep secured financing for the project from the appellee, Philippine National Bank.

On September 5, 1961, the Philippine bank opened two irrevocable letters of credit in favor of Hoff Research in the sums of $553,000 and $6,003,506.25, which the bank's New York Agency or branch subsequently confirmed. The appellees' obligation to honor documentary drafts under both letters was conditioned, however, on the deposit to Clep's account of $900,000 with the bank in the Philippines by October 5, 1961. The appellant Hoff Research, the intended beneficiary of the letters, made several attempts to obtain this sum to deposit on Clep's behalf; but the deposit deadline, which was extended to December 11, 1961, passed before any of these efforts was successful.

Some doubt about the status of the letters existed on all sides, however, as a result of a pre-deadline transaction in which Hoff Research claimed the bank had made a payment under the smaller of the two letters and thereby waived any deposit conditions upon the larger one. Negotiations continued between the bank, Hoff Research, and others during 1962; and the appellant claims that during this period the bank represented to it that the $6 million credit would still be available upon deposit of the $900,000. On October 25, 1962, the bank finally informed Hoff Research that it was taking the position that the larger letter was inoperative and should be returned for cancellation.

Hoff Research commenced an action in the Supreme Court of New York in March of 1965, seeking $1,500,000 damages for the bank's failure to honor the two letters. Its complaint alleged three contractual theories: that the bank breached its contract with Clep by refusing to open the letters; that it improperly retained the $553,000 proceeds of the first letter after a November, 1961, transaction allegedly satisfying the $900,000 deposit condition had taken place; and that the second letter was properly issued but not honored. The bank's summary judgment motion was granted March 3, 1966, in an unreported opinion holding that the $900,000 deposit was not made before the December, 1961, expiration date of the first letter, and that operation of both letters was conditioned upon this deposit. The decision was affirmed without opinion by the Appellate Division, 26 A.D.2d 992, 275 N.Y.S.2d 800 (1st Dept. 1966); leave to appeal was denied, 19 N.Y.2d 582, 279 N.Y.S.2d 1027, 226 N.E.2d 708 (1967); and a petition for certiorari also was denied, 389 U.S. 829, 88 S.Ct. 90, 19 L.Ed.2d 86 (1967).

On March 19, 1969, the appellant began the present diversity suit against the bank and its New York Agency, seeking $1 million damages based on the appellees' alleged fraudulent representations that the $900,000 deposit would still be accepted after the December, 1961, deadline had passed and their claimed interference with Hoff Research's attempts to raise this sum after that date. On the appellees' motion to dismiss the complaint, the District Court held that the portion of the fraud suit seeking recovery of expenses incurred in trying to secure loans after the expiration date and damages for injury to business reputa-

tion was not barred by any collateral estoppel effect of the prior state court contract action. It held, however, that the previous judgment did bar the portion of the current suit seeking a recovery of the appellant's lost profits on its aborted contract with Clep, since that decision had been based on the same allegations as those made in the present suit, that the bank had prevented Hoff Research from fulfilling the $900,000 deposit condition for the letters needed to finance the contract. In addition, the court held that the present action is barred in its entirety by the statute of limitations. Because it is based on the assertion that the appellees' 1962 fraud was timely discovered by Hoff Research in October or November of 1965, Judge Motley found that the action, begun in 1969, was barred by New York's CPLR §§ 203(f) and 213(9), which require that a fraud action be commenced within either six years after its accrual or two years after the fraud's actual or imputed discovery, whichever is later.[1]

On this appeal Hoff Research stresses an aspect of the statute of limitations issue which was not called to the attention of the District Court. The CPLR transitional provision, § 218, provides:

"(b) Cause of action accrued and not barred at effective date. Where a cause of action accrued before, and is not barred when this article becomes effective, the time within which an action must be commenced shall be the time which would have been applicable apart from the provisions of this article, or the time which would have been applicable if the provisions of this article had been in effect when the cause of action accrued, whichever is longer."

The appellant contends that its fraud cause of action accrued in late 1961 or early 1962, before the CPLR became effective on September 1, 1963; and it, therefore, claims the benefits of the former Civil Practice Act, which allowed suit upon such a cause to be commenced within six years from discovery rather than two.[2]

This argument raises a question of state law not yet passed upon by the courts of New York and requires a reconciliation of two separate legislative policies embodied in parallel sections of the CPLR. On the one hand, § 218(b) was enacted to preclude the shortening of pre-1963 limitation periods already running on numerous causes of action, thereby obviating potential constitutional difficulties. See, e. g., Hastings v. H. M. Byllesby & Co., 293 N.Y. 413, 57 N.E.2d 737 (1944). On the other hand, § 203(f) was drafted to reduce to two years the interval within which a litigant must act on any cause with a limitation period which begins to run upon

1. § 213 includes in its list of "actions which must be commenced within six years" the following:
"9. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."
§ 203(f), dealing with all time periods computed from discovery, elaborates:
"[T]he action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer."
These sections together have been held to yield, in a somewhat roundabout fashion, the six years from accrual or two years

from discovery rule for actual fraud actions. See McCabe v. Gelfand, 57 Misc. 2d 12, 291 N.Y.S.2d 261, vacated 58 Misc. 2d 497, 295 N.Y.S.2d 583 (Sup.Ct. Kings Co.1968); 1 Weinstein, Korn & Miller, New York Civil Practice ¶ 203.35 (1969).

2. The former CPA provided:
"§ 48. Actions to be commenced within six years. The following actions must be commenced within six years after the cause of action has accrued:
* * * * *
5. An action to procure a judgment on the ground of fraud. The cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud."

actual or imputed discovery. The question is which of these principles the legislature intended to govern a fraud cause of action which accrued under the CPA but was discovered only after the CPLR became effective.

The answer lies in the fact that the CPLR treats actual or imputed discovery as a triggering event for the running of an alternative period of limitation wholly independent of periods which run from accrual. In its equitable origins, the idea that a statute of limitations should not run upon a cause of which the owner is reasonably unaware bears some similarity to principles under which various events may toll a statute which has begun to run. See generally 54 C.J.S. Limitations of Actions § 184 (1948). Yet New York has not designated the undiscovered fraud situation as one in which a limitation period begins to run for a conceptual instant at accrual of the cause and then is tolled until discovery. Instead, in a case of undiscovered actual fraud the pre-CPLR law looked to discovery alone as the relevant event which launched the running of the statute. See, e. g., Ectore Realty Co. v. Manufacturers Trust Co., 250 App.Div. 314, 294 N.Y.S. 96 (1st Dept. 1937). Thus CPA § 48(5) in effect allowed suit within six years after either accrual or discovery, in the event that the two were not simultaneous and covered both cases by stating that the cause was not "deemed to have accrued" at all until discovery.[3]

But the draftsmen of the CPLR concluded that delayed discovery of a previously-accrued cause of action constituted a unique situation in which especially prompt action by a litigant is necessary in the interest of fairness.[4] CPLR § 203(f) accordingly shortened all periods triggered by discovery to two years, separating them from periods timed from the accrual of a cause of action and granting litigants the benefit of the longer alternative. The result, in an actual fraud suit, is two separately-timed and alternative limitations periods in the case of a delayed discovery: six years from accrual or two years from discovery, whichever is longer.[5]

The draftsmen who provided for the preservation of CPA limitations periods for causes "accrued and not barred" on September 1, 1963, thus indicated in the same statute that they did not consider the accrual date of such causes relevant to the running of the alternative periods triggered by discovery. It does not appear that they intended the "preservation" of a six-year-from-discovery period for causes on which it had not yet begun to run when the CPLR took effect, since suit could be brought on these within the two-year period the legislature thought fully adequate for all other hitherto undiscovered causes. Although a right of action such as the appellant's might have been "accrued and not barred" on the relevant date, the preservation of accrual-triggered periods which had be-

---

3. See note 2, *supra.* The appellees argue that a cause not "deemed to have accrued" until discovery actually does not accrue until then for any statute of limitations purpose, or at least that this was the understanding of the draftsmen of CPLR § 218(b). If this were the case, then causes of action "accrued and not barred" on September 1, 1963, could include only fraud causes which had been discovered by then. While this argument is consistent with our interpretation of the CPLR, *infra,* its suggestion that the draftsmen incorporated such a construction of a superseded CPA section in CPLR § 218(b) is not as persuasive as are the implications of what they did in other parts of the CPLR itself.

4. The shortening of this time period to two years in § 203(f) represents an effort to balance the interests of plaintiffs and defendants. See generally 1 Weinstein, Korn & Miller, *supra* note 2, ¶ 203.35, at 2–79, 2–80.

5. The draftsmen also eliminated potential confusion by omitting the conceptually ambiguous "deemed to have accrued" language of the CPA, see note 3, *supra.* CPLR § 213(9), in the phrase "shall be computed from," provides simply that discovery establishes the date of the time within which to bring a fraud action.

gun to run is all that § 218(b) provides for them.[6]  Cf. Romano v. Romano, 26 A.D.2d 123, 271 N.Y.S.2d 488 (4th Dept. 1966), aff'd, 19 N.Y.2d 444, 280 N.Y.S.2d 570, 227 N.E.2d 389 (1967); McCabe v. Gelfand, 58 Misc.2d 497, 295 N.Y.S.2d 583 (Supp.Ct. Kings Co.1968).

Hoff Research, therefore, should have brought its fraud suit within either six years after its accrual or two years after its discovery.  Since for present purposes the parties assume these dates to be 1962 and 1965, respectively, the 1969 action was barred.

Because the statute of limitations is a complete bar, we express no opinion concerning the appellant's additional argument, which is that no aspect of the fraud issue was either litigated or adjudicated in the prior contract suit and that therefore it should be permitted to establish damage in the form of lost profits not caused by the breach of any contractual requirement that the bank honor the letters.

Affirmed.

6. This case is not one in which a fraud cause of action was discovered as well as accrued before the CPLR became effective, so it does not raise the question of whether § 218(b) was also intended to preserve discovery-based limitation periods which had begun to run.