# FOREST GROVE BRICK WORKS, INC.,
### *Appellant,*
### *v.*
# STRICKLAND et ux, *Respondents.*
## (No. 34-274, SC 24528)
### 559 P2d 502.

Ray G. Brown, Portland, argued the cause for appellant. With him on the briefs was John R. Sidman, Portland.

J. W. Darr, Hillsboro, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Howell, Lent, and Bradshaw, Justices.

LENT, J.

## LENT, J.

This is an action for money damages for fraud arising out of the sale to plaintiff by defendants of a vacuum pump used in the manufacture of clay drain tile. Plaintiff appeals from a dismissal of his action by summary judgment.

The dispute arose from the failure of the purchased pump to produce the amount of suction which defendants warranted. The pump was sold to plaintiff on November 15, 1968. On March 11, 1974, plaintiff filed a complaint against defendants for breach of warranty. Plaintiff alleged that defendants warranted that the pump would produce 21 inches of vacuum for four continuous hours. The complaint further recited that plaintiff discovered the pump would not function as warranted and gave notice of the breach of warranty to defendants by July 1, 1971.

After a demurrer based upon the statute of limitations was allowed, plaintiff filed a third amended complaint based upon fraud. After various motions, a sixth amended complaint was again framed on a theory of fraud, and alleged: the purchase; the representations that the pump would produce 21 inches of vacuum for four continuous hours; that the representations were false and knowingly or recklessly made with the intent to defraud and that plaintiff believed and relied upon the representations to his detriment.

Plaintiff further recited that he first learned on January 15, 1973, after obtaining a manufacturer's brochure, that the pump was not designed to produce the required suction. According to allegations contained in this complaint, plaintiff asked the defendants during 1970-1972 why the pump was malfunctioning. Defendants assured the plaintiff that the pump was large enough to meet plaintiff's need and that there was no book of operating instructions for the pump. The amended complaint alleged that at the urging of defendants, plaintiff tried various schemes to correct the problem, including installation

[ 83 ]

of a larger motor and an oil reclaimer, inspecting and overhauling the machine to which the pump was connected and spraying water on the pump while it was operating. Plaintiff alleged:

> "During all of the foregoing transactions plaintiff trusted said defendant and was lulled into a belief that said pump would be made to operate satisfactorily. Defendants, however, concealed from it the fact that the pump was not engineered or designed to produce 21 inches of vacuum for four continuous hours."

To this complaint, defendants filed a motion for summary judgment based upon expiration of the applicable statute of limitations.[1] In an affidavit opposing the motion, plaintiff's agent swore that,

> "It is correct that I discovered, prior to January 15, 1973, that the pump in question would not produce 21 inches of vacuum for four consecutive hours, and that it overheated."

Because plaintiff discovered more than two years prior to the original complaint that the pump was not as represented by the defendants, the trial court entered an order allowing the motion for summary judgment. Plaintiff appeals from the judgment entered in favor of defendants.

■ ORS 18.105(3), the summary judgment statute, is identical to Federal Rule of Civil Procedure 56(c). It provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Our function on appeal is to examine the record to

---

[1]The applicable statute of limitations is ORS 12.110(1). It provides:

"An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

determine if there are triable issues of fact which would preclude summary procedure. In the present case, the inquiry is, first, whether as a matter of law the period of limitations begins at the time plaintiff discovered that the pump would not function as represented. If not, the issue becomes whether the facts are free from dispute as to when the period commenced.

The period of limitation in fraud cases commences "from the discovery of the fraud or deceit."[2] The fraudulent misrepresentation asserted here is that the pump would produce a certain amount of suction. To the average person, such a statement could imply not only that the particular pump was capable of such a performance but that, generically, all pumps of that design and engineering would produce the warranted performance. Given its failure to do so, two causes would be suspected: either that a defect in the manufacture or error in maintenance prevented full performance or that the pump was not designed to do the task. Not all cases of manufacturing defects give rise to actions for fraud. It may be that the particular defect was unknown to the seller at the time of the misrepresentation, so that the elements of scienter or intent are lacking.[3] It cannot be said, then, that knowledge by plaintiff here that the pump would not perform as represented shows *actual* knowledge of *fraud* as a matter of law.

The word "discovery" in the statute has been interpreted, however, in an objective as opposed to a

---

[2] ORS 12.110(1), *supra* at n. 1.

[3] In *Musgrave v. Lucas,* 193 Or 401, 410, 238 P2d 780 (1951) it was held that:

"Comprehensively stated, the elements of actionable fraud consist of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." *Accord: Chaney v. Fields Chevrolet,* 258 Or 606, 611-12, 484 P2d 824 (1971); *Zeleny v. Karnosh,* 224 Or 419, 356 P2d 426 (1960).

subjective manner. Not only knowledge but imputed or constructive knowledge will commence the period of limitations. A person is charged with knowledge that "a reasonably diligent inquiry would disclose"[4] when he receives "notice enough to excite attention and put a party upon his guard or call for an inquiry . . ."[5]

It may be that here the failure of the pump over a long period of time called for such an inquiry. But the issue is not free from doubt. As has been noted,

> "The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application. A fraud which is flagrant and widely publicized may require the defrauded party to make immediate inquiry. On the other hand, one artfully concealed or convincingly practiced upon its victim may justify much greater inactivity. The presence of a fiduciary relationship or evidence of fraudulent concealment bears heavily on the issue of due diligence." *Azalea Meats, Inc. v. Muscat,* 386 F. 2d 5, 9 (5th Cir. 1967).

Thus, in the present case two questions are presented. Was plaintiff's knowledge that the pump would not function as represented sufficient to raise the inference of fraud? And, if so, could the plaintiff exercise reasonable diligence and discover the alleged

---

[4] *Wood v. Baker,* 217 Or 279, 287, 341 P2d 134 (1959); *Huycke v. Latourette,* 215 Or 173, 175-76, 332 P2d 606 (1958). In *Salem Sand & Gravel v. City of Salem,* 260 Or 630, 636-37, 492 P2d 271 (1971), it was held: " 'Discovery' means from the time the fraud was known or could have been discovered through exercise of reasonable care." *Accord: Dixon v. Schoonover,* 226 Or 443, 447, 359 P2d 115, 360 P2d 274 (1961); *Dilley v. Farmers Ins. Group,* 250 Or 207, 210, 441 P2d 594 (1968).

[5] *Linebaugh v. Portland Mortgage Co.,* 116 Or 1, 14, 239 P 196 (1925). Mere suspicion of fraud may not be enough to excite inquiry. It is at some point on the continuum of understanding between mere suspicion and knowledge that constructive notice of the fraud will be found. The exact point has been defined as: "[W]here circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded" (*Warner v. Republic Steel Corp.,* 103 F. Supp. 998, (S.D.N.Y. 1952)); "when facts are known from which the inference of fraud flows." (*Ectore Realty Co. v. Manufacturers Trust Co.,* 250 App Div. 314, 294 N.Y.S. 96 (1937); "evidential facts leading to a belief in the fraud" (*Davison v. Hewitt,* 6 Wash. 2d 131, 106 P2d 733 (1940)).

fraud?[6] Even if knowledge that the pump would not produce as warranted raises an inference of fraud, the issue of reasonable diligence is clouded by the allegations of fraudulent concealment contained in the amended complaint and plaintiff's affidavit. We cannot say, based upon the record before us, that plaintiff's reliance on defendants' explanations of the causes of the malfunctioning of the pump was entirely misplaced or unreasonable;[7] therefore, an issue of fact remains as to when the period of limitation began.

To warrant summary judgment the moving party must show that there is no genuine issue of material fact. It is not the function of this court on review to decide issues of fact but solely to determine if there is an issue of fact to be tried. We review the record on summary judgment in the light most favorable to the party opposing the motion.[8]

In *Hoeflich v. William S. Merrell Co.,* 288 F.Supp. 659 (E. D. Penn. 1968), the issue in a summary judgment proceeding involved discovery of medical malpractice. The court commented,

> "Though the summary judgment procedure is freely available in all types of litigation, it is obvious that some kinds of cases lend themselves more readily to summary adjudication than do others. It usually is not feasible to resolve on motion for summary judgment cases involving questions such as when knowledge is discoverable by reasonable diligence of plaintiff and concealment by the defendants. It would be wrong to generalize from this

[6]For a similar analysis, *see Maine v. Leonard,* 365 F. Supp. 1277, 1281 (W.D. Vir. 1973).

[7]Fraudulent concealment has been recognized in Oregon as tolling the applicable statute of limitations. *Chaney v. Fields Chevrolet Co.,* 264 Or 21, 26-7, 503 P2d 1239 (1972).

[8]*United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam); *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 (1962). (interpreting F. R. Civ. Pr. 56(c)). Because the Oregon summary judgment statute is identical to Fed. Rule Civil Procedure 56(c), decisions of the Federal Courts on summary judgments are of helpful guidance. *See State ex rel Western Seed v. Campbell,* 250 Or 262, 270-71, 442 P2d 215 (1968): "When one state borrows a statute from another state, the interpretation of the borrowed statute by the courts of the earlier enacting state ordinarily is persuasive. (citing cases)."

and conclude that summary judgment never is granted in such cases." (288 F.Supp. at 662)[9]

We do not pass on the validity of plaintiff's response to the statute of limitations argument but hold merely that it raises disputed questions of fact. For this reason, the judgment must be reversed and the cause remanded for further proceedings.

---

[9]Similarly, in *Dzenits v. Merrill, Lynch, Pierce, Fenner & Smith,* 494 F.2d 168 (10th Cir. 1974) (involving the issue of actual or constructive knowledge of fraud for purposes of commencement of limitations period and appropriateness of summary judgment), the court said: "While cases involving defenses hinging upon applicable statutes of limitation frequently lend themselves to summary judgment proceedings, a court should not grant summary judgment for a defendant if there is a viable issue of fact as to when the limitations period began. 10 Wright and Miller § 2734, n. 31 at p. 651; 6 Moore § 56.17 (58) at 2171-72 and cases cited at note 10 . . . It would seldom, if ever, be possible for a judge to determine summarily when the injured person in a case such as this became fully aware that he or she had been victimized. An appraisal of the full testimony is generally called for." (494 F2d at 171-72. *See also, Saylor v. Lindsley,* 391 F2d 965 (2d Cir. 1968); *Sheets v. Burman,* 322 F2d 277 (5th Cir. 1963); *R. J. Reynolds Tobacco Co. v. Hudson,* 314 F2d 776 (5th Cir. 1963); *Tracerlab, Inc. v. Industrial Nucleonics Corp.,* 313 F2d 97 (1st Cir. 1968); *Pollard v. United States,* 384 F. Supp. 304 (M.D. Ala. 1974) and *Hornung v. Richardson-Merrill, Inc.,* 317 F. Supp. 183 (D. Mont. 1970).