**G. Thomas CESTARO et al., Plaintiffs,**

v.

**Thomas J. MACKELL et al., Defendants.**

**No. 76 C 682.**

United States District Court,
E. D. New York.

April 1, 1977.

Karpatkin, Pollet & LeMoult, New York City, for plaintiffs.

W. Bernard Richland, Corporation Counsel, New York City, for New York City.

Gilbert, Segall & Young, New York City, for I. T. & T.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants Avis, Giuffreda, Nelson, Napolitano and Stillman.

Spiros A. Tsimbinos, Kew Gardens, N. Y., for defendant Monty.

GEORGE C. PRATT, District Judge:

## MEMORANDUM

Invoking the fourth, fifth, sixth, eighth, and fourteenth amendments and 42 U.S.C. § 1983,[1] plaintiffs seek monetary, declaratory, and injunctive relief to remedy injuries allegedly incurred because of defendants' conspiratorial violations of their civil rights. Defendants have moved for dismissal. For the reasons set forth below, I find that the action is time-barred and that defendants' motions must therefore be granted. The following discussion necessarily assumes the complaint's allegations to be true.

---

1. By stipulations filed November 9, 1976, the plaintiffs withdrew without prejudice "Count III" of their complaint which asserted claims under 42 U.S.C. §§ 1985 and 1986.

## THE COMPLAINT

The complaint names as plaintiffs: Sta-Brite Auto Painting Corporation, G. Thomas Cestaro, Catherine Cestaro, and Richard Marchetti. Sta-Brite is a New York corporation, which from 1963 until April 26, 1971, repaired cars for defendant Avis Rent–A–Car Systems, Inc., as a contractor mechanic. Mr. Cestaro was the principal owner, officer, and operator of Sta-Brite. His wife, Mrs. Cestaro, was a part-time secretary for Sta-Brite and held the title "Corporate Secretary". Plaintiff Marchetti was employed by Avis as a damage control supervisor until Avis suspended him on April 27, 1971, and finally terminated his employment on June 7, 1971.

Plaintiffs now seek relief from two groups of defendants.[2] One includes certain individuals who at the time of the alleged conspiracy were members of the office of then Queens County District Attorney Thomas Mackell. The complaint accordingly refers to them as the "Mackell defendants". The second group of defendants, the "Avis defendants", includes Avis Rent–A–Car Systems, Inc., its corporate parent International Telephone and Telegraph Corporation, and certain individuals employed by Avis at the time of the alleged conspiracy.

Plaintiffs allege that "the Mackell defendants acted pursuant to a long-standing agreement and conspiracy with the Avis defendants to use the powers and authority of the Queens County District Attorney's office to enforce the private interests and whims of the Avis defendants in return for money and other favors supplied by [the] Avis [defendants] to the Mackell defendants." According to the complaint, the conspiracy culminated in the groundless prosecution of plaintiffs on numerous charges allegedly arising out of their submission of fraudulent bills to Avis, with plaintiffs ultimately being coerced into accepting an agreement whereby: Sta-Brite pled guilty to one count of grand larceny in the third degree, a Class E felony under New York law; Mr. and Mrs. Cestaro executed a limited release in favor of Avis; Marchetti executed a general release in favor of Avis and the Queens County District Attorney's office; and the District Attorney's office in return moved to dismiss the remaining charges against Sta-Brite and all the charges against Mr. Cestaro, Mrs. Cestaro, and Marchetti.

The complaint further asserts that the Mackell and Avis defendants conspired to conceal the alleged conspiracy, and that plaintiffs were unaware of the conspiracy until "public hearings held by the New York State Joint Legislative Committee on Crime on May 3 and October 11, 1973 and until the trial of defendant Monty in February and March 1974". The complaint also alleges that in the fall of 1973 the defendants twice attempted unsuccessfully to bribe the plaintiffs into having the legislative committee call off its investigation.[3]

## DISCUSSION

■ One of the grounds common to all defendants' motions to dismiss is that plaintiffs' claims are time-barred. Absent an applicable federal statute of limitations, the court must look to state law. Specifically, "An action brought under the federal Civil Rights Act is subject to the statute of limitations the state courts would apply in an analogous state action." *Meyer v. Frank,* 550 F.2d 726, 728 (C.A.2 1977). And this court has applied the same principle to civil rights claims asserted directly under the Constitution. *Ervin v. Lanier,* 404 F.Supp. 15, 20 (E.D.N.Y.1975) (fourth amendment). Moreover, whatever statutory period applies to plaintiffs' claims for damages also applies to their claims for equitable relief. *Mizell v. North Broward Hospital District,* 427 F.2d 468 (C.A.5 1970); *Baker v. F & F Investment,* 420 F.2d 1191, 1193 (C.A.7), *cert. denied sub nom. Universal Builders*

---

**2.** The action was dismissed as to defendant City of New York by stipulation filed on September 28, 1976.

**3.** The foregoing discussion of the complaint summarizes that set forth in the court's unpublished memorandum and order of March 17, 1977.

*Inc. v. Clark,* 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970); *Needleman v. Bohlen,* 386 F.Supp. 741, 749 (D.Mass.1974).

What then would be the applicable New York limitations period? Normally, "the applicable statute of limitations in a federal civil rights case brought in New York is the three years provided by N.Y.C.P.L.R. § 214(2)—liability based on a statute." *Kaiser v. Cahn,* 510 F.2d 282, 284 (C.A.2 1974) (42 U.S.C. § 1983); *accord, Ervin v. Lanier, supra* (fourth amendment). Since the complaint was filed on April 12, 1976, ordinarily only acts which occurred after April 11, 1973 would be actionable. Virtually all the events described in the complaint precede that date. However, plaintiffs make three arguments in an attempt to save their action.

■ First, plaintiffs point to the unsuccessful attempts to bribe them which defendants allegedly made in the fall of 1973. But any such attempts are of no significance here since none is alleged to have caused any plaintiff actual injury. *Mizell v. North Broward Hospital District, supra,* 427 F.2d at 475; *Hoffman v. Halden,* 268 F.2d 280, 302 (C.A.9 1959). According to the complaint, the last act of defendants that actually injured the plaintiffs occurred on June 9, 1972, when the defendants allegedly coerced Sta-Brite into entering a guilty plea and the Cestaros and Marchetti into executing releases. That was well over three years before plaintiffs filed their complaint.

■ Second, plaintiffs urge that defendants are estopped from asserting any statute-of-limitations defense. But plaintiffs do not claim that defendants misled them as to either the relevant statutory requirements or the need to comply with them.

*Compare Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Moreover, by May of 1973, at the latest, plaintiffs were fully aware of the nature of the conduct which they now ascribe to the defendants; yet, this action was not filed until well over two years later. Under such circumstances, equity clearly should not bar application of the statute of limitations.

■ Plaintiffs' third argument to escape the three year limitations period is based on the concealment doctrine. Under this federal doctrine, except where Congress has expressly provided to the contrary, a statute of limitations is tolled as long as a plaintiff, through no fault of his own, remains ignorant of his claim because of the defendants' having fraudulently concealed the underlying facts.[4] Plaintiffs contend, and I therefore assume, that the defendants fraudulently concealed their conspiracy, and that plaintiffs did not discover they had cognizable claims against defendants until the public hearings held by the New York State Joint Legislative Committee on Crime in May of 1973.[5]

Defendants counter this claim with several arguments, only one of which needs to be considered since it is dispositive. Defendants argue that when the concealment doctrine is invoked to toll a limitations period which otherwise would have expired, then a separate two year period becomes applicable under NYCPLR § 203(f), to run from the date of "discovery".[6] Since plaintiffs concede their actual discovery of the relevant facts to have been more than two years prior to their filing the complaint, the action, defendants argue, is time-barred.

---

**4.** *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (C.A.2), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); *Atlantic City Electric Co. v. General Electric Co.,* 312 F.2d 236, 239 (C.A.2 1962); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 460–61 (C.A.2 1974); *Baker v. F & F Investment,* 420 F.2d 1191, 1198–200 (C.A.7), *cert. denied sub nom. Universal Builders Inc. v. Clark,* 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970); *Pollard v. United States,* 384 F.Supp. 304, 307 (M.D.Ala.1974) (§ 1983 claim); *Mittendorf v. J. R. Williston &*

*Beane Inc.,* 372 F.Supp. 821, 833 (S.D.N.Y. 1974); *Saylor v. Lindsley,* 302 F.Supp. 1174, 1180–81 n. 12, 1183 (S.D.N.Y.1969).

**5.** In their memorandum filed September 1, 1976, at page 25, plaintiffs concede that the concealment doctrine does not toll the statute of limitations past May of 1973.

**6.** "Discovery" in this context means either actual or imputed discovery of the claim.

■ The key question for decision, then, is whether NYCPLR § 203(f) applies where a limitations period has been tolled under the federal concealment doctrine. I hold that it does because, except where otherwise expressly provided,[7] the New York statute's two year period must be applied in any action where time is computed from "discovery" of the facts.

Subsection (f) of NYCPLR § 203 provides:

Except as provided in article 2 of the uniform commercial code or in section two hundred fourteen-a of this chapter, *where the time* within which an action must be commenced *is computed from the time when facts were discovered* or from the time when facts could with reasonable diligence have been discovered, or from either of such times, *the action must be commenced within two years after such* actual or imputed *discovery* or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer. (Emphasis supplied.)

Effective in 1963 as part of New York's new Civil Practice Law and Rules, § 203(f) was an innovation to New York practice. Its language bespeaks a clear legislative policy that for any New York action where the time to sue is extended because of failure to discover the wrong, the maximum extension should be two years.

As noted by Professor McLaughlin in his "Practice Commentary" on this section:

The philosophy behind this statute is simple: a plaintiff whose statute of limitations has been tolled until he discovers the cause of action, and who discovers the cause of action long after it has accrued, should not have the same length of time in which to sue as a plaintiff who discovers his cause of action promptly. Thus, the statute provides that, where a statute of limitations is tolled pending discovery, the plaintiff shall have his basic statute of limitations computed from the time the cause of action accrued or two years from discovery, whichever is longer. McKinney's Consolidated Laws of New York, Book 7B at 125–26.

And, as the Joint Committee on the Civil Practice Act commented in its Sixth Report to the Legislature in support of section 203(f),

[W]here the facts are not discovered, and the period consequently would not begin to run until long after the event, *there seems no reason why the plaintiff should not be required to proceed expeditiously after such discovery period.* The period adopted for such cases is two years from the discovery, unless the applicable period—computed without benefit of postponement for non-discovery—would not have run by this time. McKinney's Consolidated Laws of New York, Book 7B at 129–30 (emphasis supplied).

■ True, § 203(f) has been applied most commonly in actions for fraud,[8] whereby express statute time is computed from actual or imputed discovery.[9] However, the language of § 203(f) is not confined to fraud actions, or even to the larger category of actions where a statute provides that time runs from "discovery". Instead, the section is broad in scope, and as noted by Professor McLaughlin in his "Survey of New York Law", it "appears to be of general applicability". 21 Syr.L.Rev. 709, 716

---

7. See NYCPLR § 214–a discussed in note 11 *infra.*

8. See, *e. g., Klein v. Shields & Co.,* 470 F.2d 1344 (C.A.2 1972); *Klein v. Auchincloss, Parker & Redpath,* 436 F.2d 339, 341 (C.A.2 1971); *Hoff Research & Development Laboratories, Inc. v. Philippine National Bank,* 426 F.2d 1023 (C.A.2 1970); *Mittendorf v. J. R. Williston & Beane, Inc.,* 372 F.Supp. 821, 830 (S.D.N.Y. 1974).

9. NYCPLR § 213(8), formerly § 213(9), provides that "the time within which [an action based upon fraud] must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it." For other New York statutes of limitations which by their own terms become operable upon actual or imputed discovery, see NYCPLR §§ 206(a)(1) & (b) and 214(7).

**470**

(1969).[10] Both the statute's language and underlying policy confirm that conclusion.

Research has disclosed only one case which faced the question of whether § 203(f) should apply in a nonstatutory discovery situation. *Slagen v. Marwill,* 78 Misc.2d 275, 356 N.Y.S.2d 511 (Sup.Ct., Rensselaer County 1974). There, plaintiff commenced his foreign object malpractice action more than two, but less than three years after "discovery". Under *Flanagan v. Mount Eden General Hospital,* 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969), the three year malpractice statute of limitations was tolled until "discovery". The question before the *Slagen* court was whether, calculating from the "discovery", to apply the usual malpractice three year period, or to apply § 203(f)'s two year period. Finding the latter period applicable, the court dismissed the complaint.[11]

█ Similarly here, the federal concealment doctrine tolls the limitation period until "discovery". Once the facts are discovered, however, New York law determines the length of the applicable period. Under § 203(f) either of two periods may apply: two years from "discovery" or three years from injury, whichever is longer. Since plaintiffs' claims here are clearly barred by both periods, the complaint must be dismissed.

---

**10.** *See also* "The Discovery Provisions of Article Two of the CPLR and Other Problems With the Statute of Limitations," *10th Annual Report of Judicial Conference of the State of New York* 96 (1965), where, although in a somewhat different context, the Conference espoused the objective of "mak[ing] the alternative formula of § 203(f) generally applicable to all actions where the time of discovery is a factor in computing the statute of limitation."

**11.** The *Slagen v. Marwill* rule that § 203(f) applies in discovered foreign objects cases was superseded in 1975 by NYCPLR § 214–a which provides that such cases may be commenced within one year of the date of "discovery". (The normal period established by § 214–a for medical malpractice actions is two and one-half years.)