Argued July 1, reversed and remanded with instructions, September 22, rehearing denied October 20, 1925.

## LUCINDA LINEBAUGH *v.* PORTLAND MORTGAGE CO.

(239 Pac. 196.)

**Evidence—In Action for Fraud It was Error to Prohibit Defendant from Testifying as to His Lack of Intent to Defraud.**

1. In an action for damages for fraud, defense being good faith, court's ruling prohibiting testimony by defendant as to his lack of intent to defraud was reversible error, in view of rule that where element of intent is involved in charge of fraud a party may testify directly that he acted in good faith.

**Limitation of Actions—Statute of Limitation in Actions for Fraud Held to Commence from Time Fraud was Known or Could have Been Known.**

2. Section 8, and Section 391, Or. L., requiring actions at law or equity based on fraud to be commenced within two years from discovery of fraud, mean from time fraud was known or could have been discovered by reasonable diligence.

**Limitation of Actions—Exercise of Reasonable Diligence to Discover Fraud and Time of Discovery are Questions for Jury, Unless Evidence is Uncontradicted, When They are for Court.**

3. Exercise of reasonable diligence to discover fraud and time of discovery to start statute of limitations are questions of fact for jury, but, though court cannot invade province of jury, under Constitution, Article VII, Section 3c, when evidence is uncontradicted, it is a question of law for court.

---

1. Direct testimony to intent, see notes in 12 Ann. Cas. 4; Ann. Cas. 1912D, 1043; 23 L. R. A. (N. S.) 367; 34 L. R. A. (N. S.) 323. See, also, 10 R. C. L. 946.

2. Fraud as preventing operation of statute of limitations, see note in 60 Am. Dec. 511.

Limitation of Actions—Evidence Held to Show Spinster Sisters
to be Sui Juris in Dealing With Corporation.

4. In a real estate transaction between a corporation and two
spinster sisters, who had been dealing in real estate before
through an agent, on whom they checked up, the sisters are to be
regarded as *sui juris* and dealing at arm's-length, without fiduciary relation.

Limitation of Actions—Action Barred by Statute of Limitations
Where Plaintiffs Knew or Ought to have Known of Fraud
More Than Two Years Prior to Action.

5. An action for fraud was barred by statute of limitations as
a matter of law, where, from evidence that plaintiffs had inspected
land and were in possession of facts sufficient to put them on inquiry, the court found that plaintiffs knew or ought to have known
of fraud over two years prior to commencement of action.

Fraud—Charge of Fraud Fails Where Plaintiffs Inspected Land
and Dealt as Strangers.

6. In an action for damages for fraudulent representations as
to character of soil and water resources, where parties dealt as
strangers, and land was inspected by plaintiffs, they cannot claim
to have been defrauded by misrepresentations of defendant.

Fraud—Charge of Fraud Fails Where Plaintiffs Relied on Own
Judgment.

7. In an action for damages for fraudulent representations as
to character of soil and water resources, where plaintiffs made a
complete and independent investigation of land, they must be regarded as relying on own judgment, and charge of fraud fails.

See (1) 22 C. J. 611.    (2) 37 C. J. 939.    (3) 37 C. J. 1255.    (4)
37 C. J. 947.    (5) 37 C. J. 939.    (6) 26 C. J. 1162.    (7) 26 C. J.
1162, 1163.

From Multnomah: LOUIS P. HEWITT, Judge.

Department 2.

This action was commenced August 24, 1922, to
recover damages claimed to have been sustained in an
alleged fraudulent transaction whereby plaintiffs exchanged their interest in an apartment house in

6. On right to rely on representations made to effect a contract
as a basis for a charge of fraud, see note in 37 L. R. A. 593.

7. Actions for false representations, see notes in 2 Am. Dec. 77;
20 Am. Dec. 626; 88 Am. Dec. 442; 18 Am. St. Rep. 555.

Right to rely on representations by vendor as to quality or condition of soil, see note in L. R. A. 1917C, 273. See, also, 27
R. C. L. 372.

the City of Portland for a ranch of 520 acres owned by defendant near Glenwood, in Klickitat County, Washington. When the exchange was consummated, on August 1, 1919, the city property was encumbered by a mortgage and delinquent taxes aggregating $10,809.75. Proceedings had been instituted to foreclose the mortgage, and plaintiffs, in a desperate effort to save the property, conveyed the same to the mortgagee and entered into a lease with an option to purchase the property for the amount of the indebtedness due. This option, at the time of the exchange, would have expired in sixty days. The interest which plaintiffs had left in the apartment house thus appears to be slight, and is to be remembered in considering the question of damages. The property in Washington was also encumbered with a mortgage of $10,000, due December 1, 1920, and a district water assessment of $3,346.66, which plaintiffs, under the terms of the agreement, assumed and agreed to pay. The interest due on the mortgages was adjusted as of August 1, 1919. Defendant paid the amount of indebtedness due on the apartment house, and in addition paid to plaintiffs the sum of $1,400. Plaintiffs assert that the property in Portland was worth $30,000, and claim the farm had no value above the amount of its encumbrances. It is charged that defendant, in order to induce them to make the exchange, falsely and fraudulently represented:

"That said farm land was very rich and productive and that the same was an excellent dairy farm; that 120 acres of said farm were in a high state of cultivation, and that 260 acres, which were at said time used as pasture, could be made ready for production at little expense.

"That said farm had appurtenant to it a good water right and that said farm was supplied with plenty of water for both stock and irrigation.

"That said farm lands and appurtenances were worth not less than the sum of $30,150.

"That plaintiffs were getting value for value in exchanging their said apartment house for said farm lands and the additional sum of $1,400 to be paid plaintiffs by defendant; that in conveying said farm lands and appurtenances subject to the encumbrances hereinabove mentioned and paying plaintiffs said sum of $1,400 the defendant was conveying and transferring to plaintiffs a consideration sufficient to equal plaintiffs' interest in said Chapman Apartments."

Plaintiffs allege:

"The said lands and appurtenances were not worth the sum of $30,150, or any sum in excess of, to wit, $7,500; that said lands were not rich or productive, but, on the contrary, require artificial irrigation, and in the absence of sufficient water to irrigate the same, said lands are arid and nonproductive, and the soil is what is commonly known as a silt or ashen soil, which bakes when the weather is hot in the absence of water for the same, and will not produce; that in truth and in fact said lands have practically no water right except as hereinafter set forth, and that at the time of said transfer, as defendant well knew, said lands were and always had been without sufficient water to irrigate the same; that said lands are irrigated by water from Frazier Creek as hereafter set forth, and during the summer and in the latter part of the irrigation season said stream dries up at a time when water is essential to produce crops on said lands, and that at said time there is not sufficient water for the stock used upon said premises, and the land bakes, dries up, and the crops fail."

Plaintiffs claim they were ignorant of the condition and quality of the soil, or of the irrigation of the same, in that section of the state, and relied

exclusively upon the representations of the defendant in reference thereto, and that they did not discover the falsity of the alleged representations concerning water rights appurtenant to the land until March, 1921, as they "were engaged in litigating said rights to such an extent they were unable to determine the true character of the soil on said premises until the fall of 1921."

Defendant denies the charge of fraud. It admits stating to the plaintiffs that "said farm land was very rich and productive, and that 120 acres of said land was in a high state of cultivation; that 260 acres which were at or about the time of the exchange of properties used as pasture, could be made ready for the plow at little expense; that a creek crossed said farm with plenty of water for stock and irrigation"; but alleges the same to be merely its opinion given in good faith and in the belief that it was true. Defendant denies having made any representation concerning the value of the property conveyed to plaintiffs. As a further defense, it is averred that plaintiffs, prior to consummation of the exchange, made a full, complete and independent investigation of the ranch, and relied upon their own judgment in the matter; that they knew, or by the exercise of reasonable diligence ought to have known, the nature and character of the soil and the water rights appurtenant thereto, and that whatever was stated by defendant was capable of definite ascertainment. Defendant further pleads that more than two years have elapsed since plaintiffs discovered, or ought to have discovered, they were defrauded, if such be the fact, and by reason thereof are barred by the statute of limitations from prosecuting this action.

On the issues thus briefly stated, the cause was submitted to the jury, and a verdict of $17,790.25 was returned in favor of plaintiffs. It is suggested by counsel for respondent, which appears to be true, that the jury reached the amount of its verdict by deducting from the value of the apartment house, found to be $30,000, the amounts paid by defendant, viz., $10,809.75 and $1,400, and that no value above the amount of encumbrances was put on the Washington property. Defendant appeals, asserting thirty-two assignments of error, but our attention will be directed only to those questions which we deem decisive.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Cake & Cake,* with an oral argument by *Mr. L. A. Liljeqvist.*

For respondents there was a brief and oral arguments by *Mr. J. K. Carson* and *Mr. W. G. Smith.*

BELT, J.—1. Error is predicated on the ruling of the court relative to the following question asked C. W. Hayhurst, vice-president of the defendant company, by counsel for appellant, "Did you, as representing the Portland Mortgage Co., intend to cheat or defraud the Misses Linebaugh?" Witness answered, "No, sir." Whereupon counsel for respondents moved to strike the answer for the reason that it called for a conclusion of the witness and invaded the province of the jury. The court said, "I think the objection will have to be sustained." Respondents contend however that the record discloses the answer was not stricken, and defendant was not thereby injured, but we are of opinion that the

court's ruling was equivalent to such in the juror's mind. The force and effect of the witness' answer was destroyed. Furthermore, it is apparent from other parts of the record that the trial court considered such inquiry improper, and so informed the jury. It is a well-settled rule where a person is charged with fraud—the element of intent being involved—that he may testify directly that he acted in good faith and had no intention to deceive or mislead the party to whom the representations were made. As it was proper for plaintiffs to state that they relied upon the representations of the defendant, it was likewise permissible for the defendant to deny the charge that it represented that which was known to be false. In view of the defense interposed, viz., that the representations by defendant were made in good faith and in the belief that the same were true, the ruling in question was particularly prejudicial and constitutes reversible error: *Board* v. *Kaylor* (Or.), 234 Pac. 263; *Mahon* v. *Rankin,* 54 Or. 328 (102 Pac. 608, 103 Pac. 53); Jones' Commentaries on Evidence, § 170; *Fleet* v. *Tichenor,* 156 Cal. 343 (104 Pac. 458, 34 L. R. A. (N. S.) 323, and note).

2. Is this action, as a matter of law, barred by the statute of limitations? It was commenced three years and twenty-four days after the deal in question was consummated, but plaintiffs claim they did not discover the fraud relative to the insufficiency of the water for stock and irrigation purposes until March, 1921, or learn of the falsity of the alleged representations concerning the quality of the soil until the fall of the same year. For the purpose of tolling the statute, plaintiffs allege they were engaged, between August 1, 1919, and March 14, 1921, in litigating water rights appurtenant to said lands

to such an extent they were unable to determine the true character of the soil until the time as above stated. Section 8, Or. L., provides that an action at law based upon fraud or deceit must be commenced within two years from the discovery of the fraud or deceit. The statutory provision that, "the limitation shall be deemed to commence only from discovery of the fraud or deceit," properly interpreted, means from the time the fraud was known or could have been discovered through the exercise of reasonable diligence: *Ewbank* v. *Lyman*, 170 N. C. 505 (87 S. E. 348, Ann. Cas. 1917A, 272); *Noyes* v. *Parsons et al.*, 104 Wash. 594 (177 Pac. 651). Section 391, Or. L., pertaining to limitation of suits in equity based on fraud and deceit, was thus construed in *Whitney* v. *Bissell*, 75 Or. 28 (146 Pac. 141, L. R. A. 1915D, 257), and, since its terms are the same in that respect as Section 8, Or. L., as amended in 1919 (Laws 1919, c. 122), the rule announced in the case last cited prevails. *Hood* v. *Seachrest*, 89 Or. 457 (174 Pac. 734), is contrary to the conclusion here reached, but that case construed Section 8 prior to its amendment in 1919, and is not now controlling.

3. When the alleged fraud was discovered or whether reasonable diligence was exercised by the plaintiffs to discover the same are ordinarily questions of fact for the jury: 37 C. J. 1255. But when the evidence is uncontradicted and only one conclusion can reasonably be drawn therefrom, it then becomes a question of law for the court to determine: 12 R. C. L. 446. In the consideration of this question we are not unmindful of the constitutional provision (Art. VII, § 3c), which precludes us from invading the province of the jury, and will therefore

not be concerned with matters upon which the evidence is conflicting.

4. It is necessary to review briefly the evidence upon which there is no dispute, and to decide whether we can say as a matter of law that plaintiffs knew, or by the exercise of reasonable diligence ought to have known, of the alleged fraud more than two years prior to the commencement of this action. At the very threshold of this case it may seem more than passing strange why two elderly, spinster sisters should desire to exchange an apartment house in the City of Portland for a ranch of 520 acres, but it appears from the record they had been dealing in real estate through their agent, M. E. Lee, since 1903, and acquired the land in controversy as a matter of speculation. In response to the question, "So you had been in the real estate business before?" Lucinda Linebaugh testified, "Yes, that is, we would buy property and Mr. Lee would sell it; if he had a farm or property and he came to us with it, if we thought it was worth taking up, we did it, and if we didn't think it was worth taking up, we let it alone." When asked, "You thought that Lee was experienced in real estate; he had been buying and selling real estate for sixteen years, yet you checked up on him too?" she replied, "Yes, we checked up on everybody." In view of this and other testimony of similar import, we deem it a fair and reasonable inference that the plaintiffs were *sui juris* and not easy prey for an alleged "soulless" corporation, as contended by counsel for respondents. It is clear that the parties were dealing at arm's-length and without fiduciary relation.

5. While defendant is charged with having defrauded plaintiffs in several particulars, the case was contested mainly on the issue of the productivity

of the soil and the amount of water for stock and irrigation purposes. Prior to making the exchange, Mr. Lee, as agent for plaintiffs, applied to the defendant for a written statement concerning the ranch, and the following letter, dated July 9, 1919, was addressed to him, which proved to be the basis of this law action:

"Confirming our conversation of this morning would state that in exchange for the equity in the Chapman Apartments, including furnishings, 355 Chapman Street, corner Mill Street, this city, 50x100 feet of ground, subject to $10,500.00 encumbrance; for the equity in our farm and stock ranch of 520 acres near Glenwood, Washington, which farm is subject to a mortgage of $10,000, interest, six per cent per annum, payable semi-annually, and District Drainage Assessment #1 Klickitat County, Washington, of $3,346.66; we are willing to recommend to our Board of Directors for their consideration this exchange (this company to take care of a second mortgage of $2,500.00 now on our farm). In order that you may have more complete information, we give you the following facts: (location of property) A brief general description may be convenient to you in viewing the place: 120 acres in high state of cultivation, 260 acres now used as pasture that can be made ready for the plow at little expense, 30 acres slashed, 110 acres excellent pasture in timber, brush, and stumps. Entire place can be farmed when cleared. Soil very rich and productive, being at one time bed of old lake, now drained, drainage canal crossing place; creek crosses farm with plenty of water for stock and irrigation. On creamery route; an excellent dairy farm. Near large outrange and just the place for handling sheep; buildings nearly new, seven room bungalow, large barn with other farm buildings.

"Yours truly,
"C. W. HAYHURST,
"Vice-President and Manager."

The representation as to value is based on a written appraisal made by George Gammie in 1917, when defendant acquired the farm property at a purchase price of approximately $30,000. This appraisal was delivered to plaintiffs at the time of the Hayhurst letter, and is as follows:

"Land is located on the east end of Camas Prairie; parts of sec. 23, 24, 25, and 26, Tp. 6 N. of R. 12 E., W. M., Klickitat County, Washington. This is a very rich tract of land, newly reclaimed by a drainage ditch passing through the whole valley—soil volcanic ash mixed with alluvial deposits and some spots mixed with small gravel at present whitish color—caused by water laying on the surface for years—now all dried off by this drainage ditch.

"The farm at present is not in good condition. I would say in a run-down condition. Hence, I valued the land low for the quality of the soil and what it could be made to produce. Nearly all of the farm can be irrigated from Frazier creek, a clear mountain stream; in fact, the water is now being run on part of the farm.

"Around Glenwood where the land has been farmed, their crops are very good. Clover grows grand and will develop into a good dairy district.

"There is a good, new six-room house in good shape—a large new barn ample accommodation for the farm, not painted rough lumber, but good and substantial—several other small buildings in fairly good condition.

"I valued the land as follows:

| | | | |
|---|---|---|---|
| 170 acres in cultivation—various crops... | $75.00 per acre | $12,750.00 |
| 70 acres been plowed—pasture.......... | 50.00 per acre | 3,500.00 |
| 200 acres pasture all open, can be plowed | 40.00 per acre | 8,000.00 |
| 80 acres timber and stumps............ | 30.00 per acre | 2,400.00 |

"Total value of land ............................$26,650.00
New two-story house, six-rooms in good condition ..... 1,200.00
Large new barn—truss roof—good and substantial .... 1,500.00
Several small buildings in fair condition .............. 800.00

"Total value of land and improvements ..............$30,150.00

"The fences are not in good condition—barbed wire and boards mostly.

"Appraised by ————————————,

"(Signed)      GEORGE GAMMIE."

Prior to date of exchange an abstract of title to the Washington property was furnished by defendant and submitted to the attorneys for plaintiffs, who upon examination, found no material objections to the title. This abstract disclosed an affidavit of Henry F. Troth, the original owner of the farm, as to the use of the waters of Frazier Creek upon his farm. While considerable time was consumed in the lower court relative to the litigation instituted by the Washington State Water Board for the purpose of adjudicating the water rights appurtenant to this and other land, counsel for respondents now concede in their brief that no misrepresentation was made by defendant as to such water rights. It is their contention that there is not sufficient water for the purposes alleged.

Before effecting the exchange, about July 15, 1919, Margaret Linebaugh, Lee, Ball and Moore went to the ranch in Washington for the purpose of inspecting the same. Lee as agent for the plaintiffs and Ball as agent for the defendant "looked the place over." Moore, acting in the capacity of an intermediary, also took active part in this inspection. At the time of this visit, according to the uncontradicted testimony of Thompson, the tenant, he had 25 acres in wheat, 40 acres in oats, 30 acres in Timothy hay, and the balance of the land was pasture. He milked 20 cows and the cream check amounted to $250 per month. Thompson was observed harvesting his crop of hay. Lee talked with the tenant and his neighbors about the water and

character of the soil. Mrs. Thompson was consulted by Margaret Linebaugh about the ranch. The amount of water available was noticed—in fact, there was so much water on the ground in certain places that the automobile in which the visiting parties were riding was in danger of being stuck in the mud. When the inspection was made and the abstract of title examined, the deal was closed. Thereafter, Lee, as agent for plaintiffs, again went to the ranch in the early part of August and remained for a period of about ten days. He was interested in promoting an irrigation project and in looking over the farm thoroughly. Arrangement was made with the tenant as to division of crops for the year 1919, and it appears plaintiffs were disappointed in that their share amounted only to the sum of $167. Lucinda Linebaugh first viewed the farm in August, 1920, while it was leased to their tenant Sappington. She remained on the ranch about two weeks. When asked to describe what she saw, she testified: "I didn't see anything out there; it was bare ground, nothing at all out there but bare ground; he had a little bit of oats on it, but that year they were too low to cut it." The crops for 1920 and 1921 were failures. In view of this state of the record is it not reasonable to believe that plaintiffs knew, or by the exercise of reasonable diligence could have known, the falsity of the alleged representations more than two years prior to the commencement of this action? Certainly they were in possession of facts sufficient to put an ordinarily prudent person on notice, and, if such be true, are bound by what due inquiry and investigation would have disclosed: *Whitney* v. *Bissell, supra.* As stated in *Noyes* v. *Parsons et al., supra:*

"Whatever is notice enough to excite attention and put a party upon his guard or call for an inquiry, is notice of everything to which such inquiry might have led."

As to what amounts to discovery of fraud, see 37 C. J. 939, and numerous cases cited in support of the text. When litigation over water rights commenced in December, 1919, the plaintiffs undoubtedly became aware of the amount of water available for use during that year. If plaintiffs' testimony is to be believed relative to failure of crops, they undoubtedly knew of the character and quality of the soil. In fact, the truth of every representation defendant is charged with having made was capable, through the exercise of reasonable diligence, of definite ascertainment the first year this farm was acquired. It is, indeed, an idle assertion of plaintiffs that they did not learn of the water shortage or quality of soil until the year 1921. We have no desire to extend the doctrine that wrongdoers can shield themselves from liability by asking the law to condemn the credulity of their victims. It does not sound well for a knave to say, "It is true that I lied to you, but you were negligent in discovering my deceit." As between the rogue and the fool the former should not have preference in law. But as said in *Peacock* v. *Barnes*, 142 N. C. 215 (55 S. E. 99):

"A man should not be allowed to close his eyes to facts readily observable by ordinary attention and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed to accomplish. In such case a man's failure

to note facts of this character should be imputed to him for knowledge, and in the absence of any active or continued effort to conceal a fraud or mistake, or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence.''

We conclude the only reasonable inference to be drawn from the facts in this case is that plaintiffs knew of, or through the exercise of reasonable diligence could have discovered, the alleged fraud prior to August 24, 1920. It follows as a matter of law that this action is barred by the statute of limitations.

6. Furthermore, on the merits, plaintiffs were not entitled to prevail and defendants' motion for directed verdict should have been allowed. The following well-established rule is applicable to the facts herein:

''Where the parties deal as strangers, and the means of knowledge are equally available, and the lands subject to the inspection of the purchaser, and he avails himself of the opportunity of inspection afforded him, he cannot be heard to say that he has been deceived, even though the truth has been withheld from him, or the facts misrepresented as the true facts are as available to him and as much within his knowledge as that of the one with whom he deals.'' *Stewart* v. *Larkin,* 74 Wash. 681 (134 Pac. 186, L. R. A. 1916B, 1069), citing many authorities.

The rule is thus announced by the United States Supreme Court in *Shappirio* v. *Goldberg,* 192 U. S. 232 (48 L. Ed. 419, 24 Sup. Ct. Rep. 259, see, also, Rose's U. S. Notes):

''When the means of knowledge are open and at hand or furnished to the purchaser or his agent and

no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor."

Mr. Justice BEAN, speaking for this court, in *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552), says:

"A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller, and between parties dealing at arm's-length, where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make use of his means of knowledge, and failing to do so he cannot recover on the ground that he was misled by the seller"—citing *Allen* v. *Mc-Neelan,* 79 Or. 606 (156 Pac. 274), and other authorities.

*Ziegler* v. *Stinson,* 111 Or. 243 (224 Pac. 641), also clearly announces the rule controlling in this case. Many authorities have been cited by respondents where relief has been granted, although inspection was made by the party claiming to have been defrauded, but in each case there was either the existence of a fiduciary relationship, artifice or deceit practiced to lull the party into a false sense of security, difficulty in ascertaining the truth by reason of the character of the thing inspected, or the parties were not dealing at arm's-length. There is no evidence in this case to take it out of the general rule above stated.

It is significant that two days after the exchange was made plaintiffs, through their agent, Lee, caused to be published in two of the Portland daily papers the following advertisement concerning the ranch in question:

"500 acres—all rich bottom land, on Camas prairie, noted for hay and stock. 340 acres under a high state of cultivation, well drained, and all under irrigation, with a perpetual water right for entire tract. 100 acres more nearly cleared and seeded, 60 acres good timber. 7 room bungalow, large barn, garage, family orchard, on good road, R. F. D. and telephone, 4 miles from R. R. shipping point. This is an ideal hay and stock ranch. Price $65,000. Will consider some trade. See photos at office."

Yet defendant is charged with having defrauded plaintiffs by representing the farm was worth $30,150!

7. It would greatly prolong this opinion to review in detail the evidence upon which we base our conclusion in this case, but from the undisputed testimony it clearly appears, in our opinion, that plaintiffs, after making a complete and independent investigation, relied upon their own judgment, and not upon the alleged representations of the defendant. They were not misled nor deceived in this transaction and have failed to establish the charge of fraud.

The judgment entered is reversed and the cause remanded, with instructions to dismiss the same.

REVERSED AND REMANDED WITH DIRECTIONS.

REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.