MATHIES, *Respondent—Cross-Appellant,*
*v.*
HOECK, *Appellant—Cross-Respondent.*
(No. 413-033, SC 25011)

588 P2d 1

Marvin S. Nepom, Portland, argued the cause and filed briefs for appellant/cross-respondent.

Roger L. Meyer, Portland, argued the cause for respondent/cross-appellant. With him on the briefs were Scott C. Wyse, Wayne D. Landsverk, and Newcomb, Sabin, Meyer & Schwartz, Portland.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

HOWELL, J.

**HOWELL, J.**

This is an action to recover damages for fraud arising out of a remodeling of plaintiff's house by the defendant contractor. A judgment for plaintiff was entered on a jury verdict, and defendant appeals. The primary thrust of the appeal is that the plaintiff's cause of action for fraud is barred by ORS 12.110, which requires such an action to be brought within two years of the discovery of the fraud.

In early 1972 plaintiff and his architect met with the defendant to discuss the remodeling of the kitchen in plaintiff's home. Defendant estimated the cost to be $4,000. Later, the plans were modified to add a deck, and it was estimated that the revised job would cost $7,000. Plaintiff decided he wanted the house painted and, according to plaintiff, the defendant estimated the cost at $1,500. There was evidence that defendant agreed to do the remodeling job on a cost plus basis. In April, 1972, the parties executed an agreement that the defendant was to remodel and paint the kitchen, build the deck and paint the exterior of the house, and that all labor was to be furnished by defendant. The agreement stated "charge for painters and carpenters $12 per hr. plus 20% to be added for labor, materials and subcontractors." After defendant started the remodeling, the plaintiff decided he wanted an existing deck replaced, a shed roofed, new gutters installed and concrete placed under the new deck.

Plaintiff became concerned about the cost, and in June, while the work was in progress, defendant supplied plaintiff with a statement showing a cost of $8,654. When the job was completed in July, 1972, however, plaintiff received a bill from defendant for $29,466. The parties met and discussed the accuracy of the statement. The defendant agreed to a list of credits totalling $503.95 and at that time plaintiff asked defendant if he had paid the painters $12 per hour. The defendant admitted that he had paid them only $9 per hour and a further credit of $443.37 was agreed

upon. Both parties signed a paper which explained the credit and plaintiff paid defendant the total amount of the bill less the two credits.

In the spring of 1974, as a result of a newspaper article plaintiff read, he made a telephone call to the Multnomah County District Attorney's office. Plaintiff was visited by two representatives of the District Attorney's office who inquired about plaintiff's experience with defendant. In August of 1974 plaintiff received from the District Attorney's office a copy of a document signed by defendant containing the following information:

"a. During the period of time from May 1, 1972 to June 28, 1973, on time and material plus jobs in which labor charges are listed, Respondent [Hans Hoeck] has knowingly charged customers in excess of what he actually paid the laborers in wages. Respondent denies, however, that he ever represented that the listed labor charges were what he actually paid to the laborers.

"b. During the period of time from May 1, 1972 to June 28, 1973, on occasions, Respondent has knowingly given estimates of costs which he knew, or had good reason to believe, would be substantially below the actual total bill."

On February 21, 1975, plaintiff filed this action charging defendant with fraud.

ORS 12.110 provides:

"An action for * * * any injury to the person or rights of another, not arising on contract, * * * shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from discovery of the fraud or deceit."

The word "discovery" in the statute has been interpreted by this court in an objective manner. *See Forest Grove Brick v. Strickland,* 277 Or 81, 559 P2d 502 (1977), and cases cited therein. Consequently, the period of limitations for fraud begins to run when the plaintiff knew or should have known of the alleged fraud. Whether the plaintiff should have known of the

alleged fraud depends on a two-step analysis. First, it must appear that plaintiff had sufficient knowledge to "excite attention and put a party upon his guard or call for an inquiry * * *." *Linebaugh v. Portland Mortgage Co.,* 116 Or 1, 14, 239 P 196 (1925). If plaintiff had such knowledge, it must also appear that "a reasonably diligent inquiry would disclose" the fraud. *Wood v. Baker,* 217 Or 279, 287, 341 P2d 134 (1959). Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence. *Forest Grove Brick v. Strickland,* supra; *Dilley v. Farmers Ins. Group,* 250 Or 207, 441 P2d 594 (1968); *Dixon et ux v. Schoonover et ux,* 226 Or 443, 359 P2d 115, 360 P2d 274 (1961); *Linebaugh v. Portland Mortgage Co.,* supra.

In the instant case, the trial court submitted two theories of fraud to the jury. Defendant separately moved to have each theory withdrawn from the jury's consideration on the grounds the statute of limitations had run. On appeal, defendant contends the trial court erred in submitting the case to the jury because the evidence showed as a matter of law that plaintiff knew or should have known of the fraud in August of 1972.

Plaintiff's first theory of the case that was submitted to the jury was that defendant initially estimated the cost of remodeling plaintiff's kitchen and constructing his deck at a price considerably lower than what defendant knew the actual cost would be. Defendant apparently concedes, and we agree, that if plaintiff could prove this allegation and could prove that he relied on defendant's misrepresentation, plaintiff would be entitled to damages for fraud.[1] Defendant, however, contends that any action for this misrepresentation is barred because plaintiff should have

---

[1]We express no opinion, however, as to whether an intentional underestimate of the cost for the *kitchen and deck* entitles plaintiff to damages based on what he was charged for the *entire* job, which included substantially more than what the parties originally agreed upon. That issue has not been briefed or argued by the parties and thus is not before us.

discovered the misrepresentation in August of 1972. We disagree.

Defendant points to the following facts in support of his contention: In August of 1972, plaintiff had received his bill and had learned that the total cost of the job was substantially greater than what he expected it to be. Plaintiff had also met with defendant and learned that he had overstated the cost of his painters. From this defendant concludes that plaintiff was put on notice of the possibility of fraud and is charged with knowledge of what a reasonably diligent inquiry would disclose.

■ As our discussion below indicates, we agree that the knowledge plaintiff had in August of 1972 was sufficient to "raise the inference of fraud." *Forest Grove Brick v. Strickland,* supra at 86. That knowledge, however, was not sufficient, as a matter of law, to raise the inference as to the fraud alleged in plaintiff's first theory of the case. The jury could reasonably have concluded that plaintiff's knowledge of the high cost of the job and his knowledge that defendant had overstated his costs would not necessarily have led him to conclude that defendant's initial estimate was intentionally low.[2] Moreover, defendant offers no evidence to show that plaintiff could have discovered this fraud by the exercise of reasonable diligence. Consequently, the trial court did not err in submitting plaintiff's first theory of the case to the jury.[3]

A different question, however, is presented by plaintiff's second theory of the case, i.e., that defendant misrepresented the cost of his carpenters and

---

[2] Plaintiff's explanation for his failure to discover the fraudulent initial estimate, which the jury was entitled to believe, was that he believed defendant had "bungled the whole thing," as opposed to having intentionally underestimated the cost of the job.

[3] It follows from our conclusion as to plaintiff's state of mind in August of 1972 that plaintiff did not waive his right to sue on his first theory of fraud "by entering into new relationships and agreements with defendant" at that time. There can be no waiver, nor an accord and satisfaction, unless the party is aware of the fraud at the time he enters into the agreement. *Green v. Uncle Don's Mobile City,* 279 Or 425, 568 P2d 1375 (1977).

laborers. As previously mentioned, plaintiff learned in August of 1972 that defendant had overstated the cost of his painters. Once plaintiff was advised that the painters were not paid $12 per hour, plaintiff had sufficient notice to "excite [his] attention" to the similar $12 per hour charges for the laborers and carpenters. *Linebaugh v. Portland Mortgage Co.,* supra at 14. Plaintiff argues that he did not at that time discover that the carpenters were not paid $12 per hour because their time cards showed only the hours worked and not the amount paid per hour. Defendant disputes this evidence and contends that the time cards did show the amount paid. Even if we accept plaintiff's version, it seems that plaintiff or his architect who had the cards for some time and who reviewed the charges for supplies and subcontractors easily could have ascertained the amount paid the carpenters per hour from sources other than the time cards, including inquiring from the defendant or the carpenters.

■ We believe that the evidence disclosed as a matter of law that the plaintiff, in the exercise of reasonable care, should have discovered in August, 1972, that the carpenters and laborers had not been paid $12 per hour as represented. Therefore, the trial court should have removed plaintiff's second theory of the case from the jury's consideration, as it was barred by the statute of limitations.

■ Because the two theories of the case were not segregated by the jury, which returned a general verdict for plaintiff, this court cannot determine the extent to which the verdict was based on plaintiff's second theory of the case. Consequently, the judgment must be reversed and the case remanded for a new trial.[4]

Reversed and remanded.

---

[4]We have considered defendant's other assignments of error but, with one exception, do not believe they warrant discussion in this opinion. Some

of the assignments of error are not discussed in defendant's "combined arguments." Of those that are, some are barely discussed and are unsupported by any authority. Still others relate only to plaintiff's second theory of the case and therefore are disposed of by our holding that the second theory is barred by the statute of limitations.

The one assignment of error that merits brief discussion relates to punitive damages, as that issue obviously will arise on retrial. Our review indicates there was evidence to support an award of punitive damages, and the trial court did not err in submitting the issue to the jury. *See Green v. Uncle Don's Mobile City,* supra n. 3; *McGill v. Huling Buick Company,* 259 Or 413, 487 P2d 656 (1971).