Argued and submitted May 7, affirmed August 29, reconsideration denied October 12, petition for review denied December 18, 1984 (298 Or 427)

# KINYON,
## *Appellant,*

### *v.*

# CARDON,
## *Respondent.*

### (16-82-06659; CA A28667)

686 P2d 1048

Terence J. Hammons, Eugene, argued the cause for appellant. With him on the briefs were Hammons & Mills, Eugene.

John B. Arnold, Eugene, argued the cause for respondent. With him on the brief were Harrang, Swanson, Long & Watkinson, P.C., Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Plaintiff brought this action for damages for alleged fraud in connection with his purchase of a mobile home park from defendant. Defendant counterclaimed, seeking specific performance of the parties' agreement. The trial court granted defendant's motions for summary judgment on plaintiff's complaint and on the counterclaim. We affirm.

Summary judgment is appropriate only when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. ORCP 47C. We review the record on summary judgment in the light most favorable to the party opposing the motion. *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977).

The evidence establishes that the parties executed an agreement on August 2, 1979, for the exchange of certain real and personal property. The terms of the agreement called for plaintiff to pay the additional sum of $480,000, with interest at ten percent per annum, in monthly installments of not less than $4,516.05 each, several other periodic payments of principal and the balance in August, 1989. The contract also contained, *inter alia,* the following provisions pertinent to this appeal:

"9. *REPRESENTATIONS AND WARRANTIES:* The Second Party [plaintiff] acknowledges that he is aware of the fact that there is a minor drainage problem during heavy rains in the back of the property described in Exhibit A.

"* * * * *

"19. *DEFAULT:* In the event the Second Party shall fail to perform any of the terms of this agreement, time of payment and performance being of the essence, the First Party shall, at their option, and subject to the requirements of notice as herein provided, have the right to foreclose this contract by foreclosure in equity; declare the whole unpaid balance of the purchase price immediately due and payable; specifically enforce the terms of this agreement by suit in equity; and in any of such events, the right and interests of the Second Party by virtue of this agreement shall cease and possession of said property shall at once be surrendered to the First Party. The Second Party shall not be deemed in default for failure to perform any covenant or condition of this agreement until written notice of said default has been given

by First Party and Second Party shall have failed to remedy the default within 15 days after the receipt of such notice."

The foundation of plaintiff's complaint is that defendant's characterization of the drainage problem referenced in paragraph 9 of the agreement was a material, willful misrepresentation of a warranty, in that that paragraph "relates the drainage problem during heavy rain as being 'minor,'" although defendant had knowledge that the problem was major. He alleged that defendant represented that the problem was minor in that "the rear portion of the property sometimes stood one or two inches deep during heavy rain, and that the water would drain away through an eight-inch drainage line in no more than one or two days at the most," but that "during the fall and winters of the years 1979 and 1980, the mobile home park's rear portion flooded repeatedly and extensively with the water reaching several feet in depth" and "did not drain off as represented, taking sometimes as long as 7 days." He further alleged that he "could not have discovered through diligence the seriousness of the water problem until after the rains of late 1980."

Defendant's answer admitted that a discussion concerning the drainage problems had occurred but denied the allegations of fraud. She also filed a counterclaim, alleging that plaintiff was in default for failure to make payments as provided in the exchange agreement, declaring the balance of the purchase price immediately due and payable and seeking relief as follows:

"(1)   Requiring Plaintiff Robert R. Kinyon to specifically perform the Exchange Agreement by paying all unpaid taxes and by paying to Defendant under the terms of the agreement the unpaid balance of the purchase price of $473,655.53 plus interest thereon at 10% per annum from July 15, 1982;

"(2)   Requiring Plaintiff to pay all court costs herein and attorney fees as the court deems reasonable;

"(3)   In the event Plaintiff fails to make such payment as ordered by the court within 15 days of the entry of the Order, that Plaintiff's rights and interests in the real and personal property described in the Exchange Agreement and possession thereof be returned to Defendant; and

"(4)   Such other relief as the Court deems reasonable."

Defendant then filed motions for summary judgment on plaintiff's complaint and her counterclaim, accompanied by a memorandum, an affidavit and excerpts from plaintiff's deposition. In that motion, defendant asserted two alternative grounds against plaintiff's complaint: (1) that the Statute of Limitations barred plaintiff's claim and (2) that plaintiff had waived his claim by entering into agreements modifying the original contract after his discovery of the alleged fraud. The trial court granted defendant's motions, and entered a judgment and decree of specific performance, with the further provision that plaintiff's interest in the property be foreclosed if he failed to comply with the decree of specific performance.

■　　The trial court's order granting summary judgment against plaintiff's claim did not specify upon which of the grounds urged by defendant it was allowed. If either is sufficient, we must affirm.

■　　We first consider whether plaintiff's claim was time barred. ORS 12.110 provides:

> "(1)　An action for * * * any injury to the person or rights of another, not arising on contract, * * * shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

The term "discovery" has been interpreted in an objective manner: the period of limitation for fraud begins to run when the plaintiff knew or through the exercise of reasonable care should have known of the alleged fraud. *Mathies v. Hoeck,* 284 Or 539, 542, 588 P2d 1 (1978); *Forest Grove Brick v. Strickland, supra,* 277 Or at 85-86. *Mathies* established the standard for an objective evaluation of time of discovery:

> "Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry * * *.' *Linebaugh v. Portland Mortgage Co.,* 116 Or 1, 14, 239 P 196 (1925). If plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose' the fraud. *Wood v. Baker,* 217 Or 279, 287, 341 P2d 134 (1959)." 284 Or at 542-43.

The point in time at which the plaintiff should have known of the fraud is an issue of fact for the jury unless only one

conclusion reasonably can be drawn from the evidence. *Mathies v. Hoeck, supra,* 284 Or at 543.

Defendant argues that in this case the knowledge that plaintiff had in late 1979 and early 1980 was sufficient as a matter of law to raise the inference of fraud. She points to the allegations in plaintiff's complaint that, in the fall and winter of 1979 and 1980, the rear portion "flooded repeatedly and extensively with the water reaching several feet in depth" and that it sometimes took as long as seven days to drain away. From this, defendant argues that plaintiff was put on notice as early as the fall of 1979 of the possibility of fraud, and is charged with constructive knowledge of what a reasonably diligent inquiry would disclose. Noting that plaintiff alleges that he ultimately "discovered" the alleged fraud in April, 1982, by talking with tenants in the mobile home park, she argues that plaintiff had ready access to that source of information in 1979, when he first became aware that conditions on the property were not as represented and that his claim is therefore barred by the Statute of Limitations. We agree.

Where, as here, the pleadings disclose that the action was commenced more than two years after the alleged fraud was committed, plaintiff must negative a lack of diligence on his part in discovering the fraud and must set forth the reasons why it was not earlier discovered.[1] *Salem Sand v. City of Salem,* 260 Or 630, 637, 492 P2d 271 (1971). Here, the gist of plaintiff's argument is that he did not discover the flooding problem *to be a problem defendant was aware of* until late 1980 or 1981. As a reason for his lack of earlier discovery, he proffers the excuse that he was under the impression that the problem was a new event, rather than one known or concealed from him by defendant in 1979. Taking as judicial admissions[2] the allegations of plaintiff's complaint that during the fall of 1979 and winter of 1980 the property flooded "repeatedly and extensively," sometimes reaching two feet in depth, and

---

[1] The pleadings show that defendant's allegedly fraudulent statements were made, at the latest, on August 2, 1979, the date when the sales agreement was executed. Plaintiff did not file his complaint until August 10, 1982, approximately three years later.

[2] *See Yates v. Large,* 284 Or 217, 223, 585 P2d 697 (1978).

taking up to seven days to drain away,[3] plaintiff's excuse for not pursuing the likelihood that the property had been misrepresented rings hollow.

██ This is not a situation where the alleged fraud was, or indeed could have been, concealed from its victim so as to justify its delayed discovery. *Cf. Forest Grove Brick v. Strickland, supra,* 277 Or at 86 (concealment of fraud by the perpetrator may justify plaintiff's failure to make immediate inquiry). Under these circumstances, plaintiff, in late 1979 or early 1980, had sufficient notice of the probability of fraud to call for an inquiry and to make a reasonably diligent inquiry. *See Mathies v. Hoeck, supra,* 284 Or at 543-45. At that time plaintiff just as easily could have ascertained the prior history of the flooding problem by inquiry to tenants of the mobile home park, as he admittedly did in 1982. We conclude that as a matter of law plaintiff, in the exercise of reasonable care, could have discovered in the fall of 1979 or winter of 1979-80 that the conditions of the property were not as represented. The trial court properly granted defendant's motion for summary judgment against plaintiff's complaint because it was barred by the Statute of Limitations.[4]

We next consider plaintiff's contention that the trial court erred in granting defendant's motion for summary judgment on her counterclaim. Defendant's memorandum in support of her motions for summary judgment was prefaced:

"LIMITED ADMISSION. Only for purposes of this Motion for Summary Judgment, Defendant Joanne Cardon (aka Joanne Parro) admits the allegations in Plaintiff's Complaint and Reply."

---

[3] On appeal, plaintiff argues that his statement in his deposition that the extent of the flooding the first year "wasn't too severe" is sufficient to present a jury issue as to when he "should have known" he had been defrauded. However, he has neither claimed nor shown that his complaint, which alleges "extensive and repeated" flooding during the 1979-80 rainy reason, in direct contradiction to his deposition testimony, is mistaken. Under these facts, when the time of discovery of the alleged fraud may be dispositive of the claim, plaintiff is not entitled to benefit from his own inconsistent statements. *See Morey, Administratrix v. Redifer et al,* 204 Or 194, 214, 264 P2d 418, 282 P2d 1062 (1955); *Haines v. Pellet,* 62 Or App 428, 432-32, 660 P2d 1074, *rev den* 295 Or 446 (1983).

[4] Because of our conclusion that plaintiff's claim was not timely filed, we do not address defendant's alternative argument that plaintiff waived his fraud claim by entering into agreements modifying the original agreement after learning of the alleged misrepresentations.

Plaintiff argues that that statement constitutes an admission by defendant of fraud in connection with the transaction and that she is therefore barred from the equitable remedy of specific performance by the "clean hands" doctrine. *See Martin v. Tikka,* 263 Or 350, 500 P2d 1209 (1972). The statement, viewed in isolation, might be fatal to defendant's counterclaim. From our review of the record, however, it is clear that the statement served only to provide a hypothetical framework for her argument on her affirmative defenses of the Statute of Limitations and waiver and does not constitute a judicial admission.

Defendant moved for summary judgment against plaintiff's fraud claim and on her own counterclaim for specific performance. In the same memorandum in which defendant made her "limited admission" she also continued to deny that she had committed any fraud in the transaction:

> "Defendant denies there was any misrepresentation regarding the drainage problems and counterclaims asking for judgment against Plaintiff for the full sum due her under the Exchange Agreement."

■ We conclude that defendant's "limited admission" posed an assumption solely for purposes of argument of her theory that any claim plaintiff had, whether valid or invalid, was barred by operation of law. We therefore find that it does not provide a factual basis for imposition of the "clean hands" doctrine against defendant on her counterclaim so as to preclude the trial court's judgment for specific performance.

Plaintiff's remaining assignment of error, that defendant did not request specific performance but only strict foreclosure, is without merit.

Affirmed.