Argued and submitted April 7, reversed and remanded October 29, 1986

## MCCRAW et ux,
*Appellants,*

*v.*

## STAPP et ux,
*Respondents.*

### (A8303-01718; CA A35921)

727 P2d 160

Stephen T. Janik, Portland, argued the cause for appellants. With him on the briefs were Jacob Tanzer, Christopher W. Angius and Ball, Janik & Novack, Portland.

D. Kevin Carlson, Portland, argued the cause for respondents. With him on the brief were Richard A. Hayden, Jr., and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Plaintiffs commenced a fraud action against defendants on March 17, 1983. The action arose out of their purchase of an interest in an apartment building from a third party. The court granted defendants' motion for summary judgment on the ground that the two year Statute of Limitations had run and dismissed plaintiffs' complaint with prejudice. Plaintiffs appeal. ORS 12.110(1). We reverse.[1]

Plaintiffs allege three claims for relief, which we summarize:

(1) Defendant William Stapp (Stapp), acting as plaintiffs' investment advisor and real estate broker, made fraudulent representations that induced plaintiffs to buy an apartment in 1979 for investment purposes. He misrepresented (a) the economic value of the property; (b) his knowledge and experience in the management of rental property, real estate investment and valuation; (c) the amount of the purchase price attributable to the depreciable property; (d) the useful life of the depreciable portion of the property; (e) the condition of the property and its need for major repair; (f) the cost of ordinary maintenance and repair; (g) the operating expenses and debt service for the property; and (h) the reasonableness of the management fee that he charged to plaintiffs. Because of these misrepresentations, they paid an excessive price for the property. They asked for damages of $175,000, the difference between the value of the property as represented and its actual value.

(2) Stapp obtained a 25% interest in the property for his wife, defendant Kathleen Stapp, for no consideration through use of a fraudulent listing scheme. Plaintiffs seek "restitution" of the amount by which the Stapps were unjustly enriched when Kathleen Stapp subsequently sold her interest to a third party.

---

[1] Defendants argue in their brief that affidavits and documents submitted by plaintiffs to the trial court after the summary judgment hearing were not properly part of the record on review. The trial court permitted plaintiffs to supplement the record, ORCP 47D, and it considered each of the supplemental documents in ruling on defendants' motion for summary judgment. Accordingly, we consider that material in our review of the court's ruling on defendants' motion. We also note that we allowed plaintiffs' motion to supplement the record with those materials.

(3) Stapp misrepresented that $350 per month was a fair and reasonable management fee, whereas a reasonable fee was only $150 a month. Plaintiffs seek "restitution" of the $200 per month difference.

■ Plaintiffs assert that the six-year Statute of Limitations, applicable to actions on contracts, ORS 12.080, governs their second and third claims for "restitution." We disagree. ORS 12.110(1) applies. "[T]he gravamen or the predominant characteristic of the action, not plaintiff's election, * * * governs whether the action is one in contract or tort." *Lindemeier v. Walker,* 272 Or 682, 685, 538 P2d 1266 (1975) [citing *Bales for Food v. Poole,* 246 Or 253, 424 P2d 892 (1967)]. Plaintiffs' second and third claims seek damages for an injury they suffered because of Stapp's fraud.

ORS 12.110(1) provides in pertinent part:

"In an action at law based upon fraud or deceit, the [two-year] limitation shall be deemed to commence only from the discovery of the fraud or deceit."

The test of when fraud is "discovered" is an objective one. *Forest Grove Brick v. Strickland,* 277 Or 81, 85, 559 P2d 502 (1977); *Mathies v. Hoeck,* 284 Or 539, 542, 588 P2d 1 (1978). In *Mathies* the court stated:

"Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry * * *.' *Linebaugh v. Portland Mortgage Co.,* 116 Or 1, 14, 239 P 196 (1925). If plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose' the fraud. *Wood v. Baker,* 217 Or 279, 287, 341 P2d 134 (1959)."

The court also stated:

"Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence." 284 Or at 543.

An additional consideration is the fiduciary relationship between the plaintiff and the defendant.[2]

---

[2] Plaintiffs' affidavits state facts that support their assertion that Stapp was in a fiduciary relationship to them.

"The law is well established in this state, as elsewhere, that a real estate broker stands in a fiduciary relationship with his client and is bound to protect his client's interest. He must make a full and understandable explanation to his client before having him sign any contracts, particularly when the contracts are with the broker himself. * * * The relationship casts upon the broker the burden of showing that there was a full and complete disclosure and that the broker did not reap a secret profit." *Starkweather v. Shaffer,* 262 Or 198, 203, 497 P2d 358 (1972). (Citations omitted.)

*See also Lindland v. United Business Investments,* 69 Or App 151, 155, 684 P2d 614, *rev'd on other grounds* 298 Or 31, 693 P2d 20 (1984). The significance of a fiduciary relationship was explained in *Forest Grove Brick v. Strickland, supra:*

"The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application. A fraud which is flagrant and widely publicized may require the defrauded party to make immediate inquiry. On the other hand, one artfully concealed or convincingly practiced upon its victim may justify much greater inactivity. The presence of a fiduciary relationship or evidence of fraudulent concealment bears heavily on the issue of due diligence." 277 Or at 86 [quoting *Azalea Meats, Inc. v. Muscat,* 386 F2d 5, 9 (5th Cir 1967)].

*See also Carey v. Hayes,* 248 Or 444, 450, 424 P2d 331 (1967).

A summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47. We review the record on summary judgment in the light most favorable to the party opposing the motion. *Forest Grove Brick v. Strickland, supra,* 277 Or at 87. Because plaintiffs assert and defendants deny that defendants made the alleged misrepresentations, we shall assume for purpose of this review that defendants made them and that the issue here is whether plaintiffs, in the exercise of reasonable diligence, should have discovered the fraud more than two years before they filed the action.

We group the misrepresentations into four categories: (1) the purchase price and down payment for the property, all relating to Kathleen Stapp's acquisition of a one-quarter interest in it; (2) the tax benefits of ownership; (3) the condition of the premises; and (4) the reasonableness of

Stapp's management fee. The affidavits of the parties give the differing versions of the facts in each category.

### 1. *Purchase Price and Down Payment*

■ Plaintiffs assert that they did not become aware of the misrepresentations regarding the purchase price and down payment until less than two years before they filed the action. At that time, they discussed selling the property with another real estate broker who alerted them to the "fraudulent listing scheme." According to plaintiffs' version of the facts, the seller had not authorized Stapp to offer the property for an amount greater than $475,000 and was to pay him a commission not to exceed $25,000. Stapp told plaintiffs that the seller wanted $495,000 for the property with an $80,000 to $100,000 down payment. Plaintiffs told him that they did not have $80,000 for a down payment. He responded that he would "forego" $20,000 of his commission to reduce the down payment to $60,000 and assume one-quarter of the contract obligation in exchange for a one-quarter interest in the property in Kathleen Stapp's name. Stapp received a $25,000 commission from the seller and did not "forego" anything to acquire the interest in the property, because he was never entitled to more than a $25,000 commission.

Defendants respond that the closing documents put plaintiffs on notice in 1979, more than two years before they filed the action. Those documents showed a $475,000 purchase price and a down payment of $60,000, which differ from the price of $495,000 and the down payment of $80,000 that plaintiffs claim that Stapp represented to them. Accordingly, defendants argue that, as a matter of law, the closing documents put plaintiffs on inquiry.

We disagree. Plaintiffs could reasonably view the difference in price and the down payment as consistent with their understanding of the transaction, particularly in view of Stapp's fiducial relationship to them. The $60,000 down payment figure reflected plaintiffs' actual contribution, and the $20,000 reduction in both the down payment and the purchase price was consistent with Stapp's representation that he was foregoing $20,000 of his commission. There is a genuine issue of material fact regarding whether the discrepancy put plaintiffs on inquiry.

Defendants assert that Addendum B to the Earnest

Money Receipt should have put plaintiffs on inquiry as a matter of law in 1979. The addendum showed that Stapp was to receive a $45,000 commission. Plaintiffs, however, assert that the addendum was not with the other documents that they signed at closing and that they did not see it until less than two years before they filed the action. It reflected an agreement between Stapp and the seller only and did not involve plaintiffs. We think the question as to whether it was available to plaintiffs and when, if at all, it should have put them on inquiry as to the existence of the alleged fraud is also a genuine issue of material fact.

### 2. Tax Advantages of Ownership

■ Defendants argue that plaintiffs' use of accountants to prepare their tax returns in 1979 and 1980 charged them with knowledge at that time that the depreciation information that Stapp allegedly supplied was erroneous. Plaintiffs' affidavits, however, state that they relied on the information that Stapp supplied, that they gave it to their accountants and that its inaccuracy was not discovered until the IRS audited their returns in late 1981, less than two years before they filed the action. Plaintiffs' counsel also submitted an affidavit stating that he would produce expert testimony to establish that it was the practice of accountants at that time to obtain depreciation information from experts in the field, like Stapp. *See* ORCP 47E. Plaintiffs have raised a genuine issue of material fact as to when they should have disovered the alleged misrepresentation regarding tax advantages of ownership of the property. We cannot hold that, because of the involvement of their accountants in 1979 and 1980, plaintiffs should have discovered the fraud as a matter of law more than two years before they filed the action.

### 3. Condition of the Premises

■ Plaintiffs state that they did not discover that Stapp had misrepresented the condition of the property until January, 1982, when tenants called them to complain about maintenance problems. They state that what they then learned about the condition of the property first showed them that Stapp's representations before the sale could not have been true.

Stapp's affidavit asserts that plaintiff Louis McCraw inspected the property on several occasions before the purchase and that he and McCraw viewed most of the units

during the months immediately following the purchase, more than two years before this action was commenced. The affidavit of the resident manager of the apartments at that time is in accord. Those facts, however, are controverted. McCraw's affidavit states that he briefly viewed only the resident manager's apartment and one or two other units on the strength of Stapp's assurances that the premises were in sound condition. We conclude that there is a genuine issue of material fact regarding to what extent plaintiffs inspected the premises and whether their inspection was reasonable.

Defendants also contend that, regardless of what inspection actually occurred, plaintiffs had no right to rely on Stapp's assurances and, as a matter of law, are charged with knowledge of what a reasonable inspection would have revealed. We disagree. Given the fiduciary relationship between plaintiffs and Stapp, and that Stapp had expressed his intention to acquire an interest in the property, we cannot say that their reliance on Stapp's representations about the condition of the property was unreasonable as a matter of law. *See Carey v. Hayes, supra. See also Coy v. Starling,* 53 Or App 76, 81, 630 P2d 1323, *rev den* 291 Or 662 (1981).

### 4. Reasonableness of the Management Fee

■ Plaintiffs were aware at the closing that the amount of the fee was $350 per month but assert that they were not aware that the amount was unreasonable until January, 1982, when they learned of the condition of the property and realized that Stapp had not earned his fee. Stapp asserts that plaintiffs were aware of the amount of the monthly fee from the first months of their purchase and that the fee was reasonable.

There is a genuine issue of material fact as to whether plaintiffs should have discovered the facts giving rise to their claim that Stapp had misrepresented the reasonableness of the management fee. Concededly, the facts could have been discovered as a result of inspecting the premises. We have already noted, however, in connection with Stapp's representations about the condition of the property, that there are genuine issues of material fact regarding the extent and reasonableness of plaintiffs' inspection of the premises more than two years before they filed the action. The court erred in granting summary judgment for defendants.

Reversed and remanded.