Argued and submitted April 16, 1986, reversed and remanded February 11, 1987

TRACER,
*Appellant,*

*v.*

OHIO CASUALTY INSURANCE COMPANY,
*Respondent.*

(A8501-00477; CA A36563)

733 P2d 62

Ira L. Gottlieb, Portland, argued the cause for appellant. With him on the brief were Keller, Gottlieb & Gorin, and Harvey W. Keller, Portland.

Duane Vergeer, Portland, argued the cause for respondent. On the brief were Vergeer, Roehr & Sweek, and Cynthia A. Croft, Portland.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff was injured when her automobile was struck by a vehicle owned by American Auto Wrecking (American) and insured by defendant. The accident occurred about 10:30 p.m. on June 3, 1983. In a prior case, plaintiff brought an action against American and Jim Wilson, an employe of American who plaintiff alleged was operating the vehicle within the scope of his employment at the time of the accident. American was granted a directed verdict on the basis that Wilson was not acting within the scope of his employment. Plaintiff was given a default judgment against Wilson.

In this case, plaintiff seeks to collect from defendant the amount of the judgment against Wilson. She alleges that Wilson was an insured under the insurance policy issued to American by defendant. The court gave defendant a summary judgment. We reverse.

The relevant provision in defendant's policy provides:

"a. *You* are an *insured* for any covered *auto.*

"b. Anyone else is an *insured* while using with *your* permission a covered *auto* * * *." (Emphasis in original.)

The sole issue before us is whether any genuine issue of material fact exists concerning whether Wilson was operating American's vehicle with "permission."

Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, indicates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47; *Kinyon v. Cardon,* 69 Or App 546, 686 P2d 1048, *rev den* 298 Or 427 (1984). All factual inferences that may be drawn from the pleadings, affidavits and supporting material must be construed against the moving party. ORCP 47; *Welch v. Bancorp Management Advisors, Inc.,* 296 Or 208, 675 P2d 172 (1983), *modified* 296 Or 713, 679 P2d 866 (1984). "Permission," within the context of the omnibus clause, need not be express. *Northwest Marine Iron Works v. The Western Casualty and Surety Company,* 45 Or App 269, 608 P2d 199, *rev den* 289 Or 209 (1980). Whether Wilson had his employer's "permission" to use the vehicle at the time of the collision is an issue of fact.

■    We conclude that a genuine issue of material fact exists concerning permissive use. In the stolen vehicle report prepared by the Portland Police Bureau in response to the telephone call of Remington, the general manager and principal operating officer of American, officer Prechtl reported:

"Complainant states vehicle parked at [the business premises of American] on June 3, 1983. Employee was going to use vehicle that evening but was unable to locate it on Saturday, June 4, 1983."

It is unclear whether the officer meant that Remington had told him that an employe was going to use the vehicle the evening of June 3 or the evening of June 4. One reasonable interpretation is that Remington had given an employe permission to use the vehicle the evening of June 3, the date upon which the accident occurred. The clarification of that ambiguity is a question of fact.

Moreover, the following exchange occurred between Remington and plaintiff's counsel during deposition:

"Q. Mr. Remington, referring you again to June 3rd of 1983, do you recall whether or not Mr. Wilson was given authority to use the Datsun pickup truck that particular day?

"A. I honestly can't say, because I don't know.
"* * * * *

"A. Earlier in this conversation you asked me if employes ever have used the trucks [for personal business] or have I ever allowed them to use the trucks. I said, at that time, 'it is against company policy. I am against it, but I am not saying that I haven't done it.' To answer your question about Jim Wilson: No, he didn't have permission, and that should be the end of it.

"Q. Did he have permission to use it during the day and for deliveries?

"A. For deliveries, yes.

"Q. Would it have been possible for him to make deliveries in the evening for you?

"A. Yes, many times they have done that.

"Q. Mr. Wilson, also?

"A. Yes.

"Q. So, he has used the Datsun for deliveries in the evening?

"A.  Correct; but that is still for company business.

"Q.  That would have been after 5:00?

"A.  Yes."

During the deposition, Remington first stated that he could not remember whether he had given Wilson permission to use the vehicle on the evening in question. He then stated that he occasionally had allowed employes to use company vehicles for personal reasons but had not given Wilson permission on the evening in question. Thus, it is unclear whether Remington was mistaken when he first stated that he could not remember whether he had given Wilson permission, whether in the course of the deposition he suddenly remembered what had transpired, whether he misunderstood the question or whether there was some other reason for the disparate statements. Those determinations are for the trier of fact. Their existence, combined with the questions raised by the police report, indicate that there are genuine issues of material fact present.

Reversed and remanded.